# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

DANIEL ZAMORA and CGC, INC.

                        Plaintiffs,              :

             v.

JP MORGAN CHASE BANK, N.A.,
JPMORGAN CHASE & CO.,
FIT INTERNATIONAL GROUP CORP.,
FOREX INTERNATIONAL TEAM INC., :
JAIRO ENRIQUE SANCHEZ, and
DILIA MARGARITA BAEZ,
                        Defendants.

-----------------------------------------------------------------x

PLAINTIFFS' RESPONSE MEMORANDUM OF LAW TO DEFENDANTS
FRCP 12(b)(6) MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION AND PRELIMINARY STATEMENT……………………………………1

STATEMENT OF FACTS………………………………………………………………...2

ARGUMENT……………………………………………………………………………....5

I.    Defendant Chase Inaccurately Alleges that Actual Knowledge Must be Pleaded for the Offenses Listed in Counts 1, 2, 3, 4, 5, 7, 8, 9, 11, 14, and 17 ……………….....6

    A.  Scienter for RICO Counts 4 and 5 Is Adequately Pleaded……………………….6

    B.  "Conscious Avoidance" or "Willful Blindness" is Sufficient to Satisfy the Knowledge Prong of an Aiding and Abetting claim…………………………...10

    C.   Substantial Assistance is Adequately Pleaded…………………………………11

II.   Counts 4 and 5 (RICO and RICO Conspiracy);  Counts 10 and 11 (Aiding and Abetting Conversion and Conversion) Are Not Time-Barred……………………...14

    A.  RICO Claims Are Not Time-Barred……………………………………......…14

    B.  Conversion/Gross Negligence Claims Are Not Time-Barred……………….......17

III.   RICO Claims Are Adequately Pleaded………………………………………...17

    A.  RICO Enterprise Is Adequately Alleged……………………………….......…17

    B.  Common Purpose Is Adequately Alleged …………………………………....19

    C.  Chase's Conducting of the Affairs of the Enterprise Is Adequately Alleged.......19

    D.  Plaintiffs Do Allege Chase Engaged in a Pattern of Racketeering…………...21

    E.  RICO Conspiracy Is Adequately Alleged…………………………………....23

IV.   The Fraudulent Misrepresentation Claim is Plausibly Alleged …………………24

V.   Plaintiffs Have Adequately Alleged a Conversion Claim…………………………..25

CONCLUSION………………………………………………………………….....26

# TABLE OF AUTHORITIES

**FEDERAL CASES**

**Page(s)**

*2006 Frank Calandra Jr. Irrevocable Trust v. Signature Bank Corp.,*
503 Fed Appx. 51 *3 (2d Cir. 2012)...........................................................................12

*Abbas v. Dixon,*
480 F. 3d 636, 642 (2d Cir. 2007)...........................................................................17

*Amendolare v. Schenkers International Forwarders, Inc.,*
747 F. Supp. 162, 171 (E.D.N.Y. 1990)...................................................................9

*Annunziatta v. Orkin Exterminating Co.,*
122 F. App'x 524, 526, (2d Cir. 2004)....................................................................17

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009)..........................................................................................5

*Bankers Trust Co. Rhoades,*
859 F. 2d 1096, 1103 (2d Cir. 1998).......................................................................14

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................................5

*Boyle v. United States,*
556 U.S. 938, 946-948 at 947 (2009).......................................................................18

*Breslin Realty Development Corp. v. Schackner,*
397 F. Supp. 2d 390, 403 (E.D.N.Y. 2005)........................................................18, 20

*Center Cadillac, Inc. v. Bank of Leumi Trust Company of New York,*
808 F. Supp. 213, 229 (S.D.N.Y. 1992)....................................................................7

*Cf., Shetiwy v. Midland Credit Management,*
15 F. Supp. 3d 437, 445 (S.D.N.Y. 2014)...............................................................23

*City of New York v. Bello,*
519 Fed. Appx. 15, 17 (2d Cir. 2014)......................................................................24

*Cohen v. S.A.C. Trading Corp.,*
711 F. 3d 353, 361-362 (2d Cir. 2013)...............................................................14, 15

*Cromer Finance Ltd., v. Berger,*
2003 WL 21436164, *9 (S.D.N.Y. 2003).................................................................10

*Cruz v. TD Bank, N.A.,*
855 F. Supp. 2d 157, 175 (S.D.N.Y. 2012).................................................26

*Cumis Ins. Soc. Inc., v. Citibank, N.A.,*
921 Supp. 1100, 1109-10 (S.D.N.Y. 1996)...............................................26

*D. Penguin Bros. v. City National Bank,*
587 Fed. Appx. 663, 668 (2d Cir. 2014)...................................................19

*DiFalco v. MSNBC Cable LLC.,*
622 F. 3d 104, 111 (2d Cir. 2010)............................................................21

*Dubai Islamic Bank v. Citibank, N.A.,*
256 F. Supp. 2d 158, 167 (S.D.N.Y. 2003)............................................8, 11

*Federal Practice & Procedure:*
Civil 3d 1326..............................................................................................6

*First Capitol Asset Management Inc., v. Satinwood, Inc.,*
385 F. 3d 159, 178 at 176 (2d Cir. 2004)................................................20

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,*
479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007).............................................10

*Gruber v. Prudential-Bache Securities, Inc.,*
679 F. Supp. 165, 181 (D. Conn. 1987).....................................................9

*In re Agape Litigation,*
713 F. Supp. 2d 298, 309 (E.D.N.Y. 2011)..............................................11

*In re Refco,*
759 F. Supp. 2d 301, 315, at 327 (S.D.N.Y. 2010)..................................26

*In re Sumitomo Copper,*
995 F. Supp. 451, 454 at 456 (S.D.N.Y. 1998)....................................18, 22

*Jordan (Bermuda) Inv. Co., Ltd v. Hunter Green Investment Ltd.,*
154 F. Supp. 2d 682, 692 (S.D.N.Y. 2001)..............................................22

*Kircher v. Bennett,*
648 F. Supp. 2d 525, 541-542 (S.D.N.Y. 2009).......................................26

*Klehr v. A.O. Smith Corporation,*
521 U.S. 179, 194-95 (1997)....................................................................16

*Lehman Brothers Commercial Corp. v. Minmetals International Non-Ferrous Metals Trading Company,*
179 F. Supp. 2d 118, 152-153 (S.D.N.Y. 2000)........................................................13

*Lerner v. Fleet Bank, N.A.,*
459 F.3d 273, 290, 291, 295 at 289 (2d Cir. 2006).........................5, 7, 11, 12, 13, 25

*Mfrs. Hanover Trust Co. v. Chem. Bank,*
160 A.D. 2d 113, 559 N.Y.S. 2d 704, 712 (1st Dep't 1990).....................................26

*MLSMK Investments Company v. JP Morgan Chase & Co.,*
737 F. Supp. 2d 137, 142-144 & At 431 (S.D.N.Y. 2010)...........................6, 7, 8, 12

*Moses v. Martin,*
360 F. Supp. 2d 533, 549 at 541 (S.D.N.Y. 2004)................................................8, 25

*New York Dist. Council of Carpenters Pension Fund v. Forde,*
939 F. Supp. 2d 268, 282 (S.D.N.Y. 2013)................................................................24

*OSRecovery, Inc. v. One Group Intern. Inc.,*
354 F. Supp. 2d 357, 376 (S.D.N.Y. 2005)........................................................13, 20

*Powers v. British Vita, P.L.C.,*
57 F. 3d 176, 186 (2d Cir. 1995)...............................................................................21

*Rehkop v. Bewick Healthcare Corp.,*
95 F. 3d 285, 290 (3rd Cir. 1996)..............................................................................24

*Reves v. Ernst & Young,*
507 U.S. 170, 179 (1993)...........................................................................................20

*Rotella v. Wood,*
528 U.S. 549, 553; 556 at 560-561 (2000)..........................................................14, 16

*Salinas v. U.S.,*
522 U.S. 52, 61-66 at 63-64 (1997)......................................................................23, 24

*S.Q.K.F.C. Inc. v. Bell Atl. Tricon Leasing Corp.,*
84 F. 3d 629, 633 (2d Cir. 1996)...............................................................................22

*United States v. Applins,*
637 F. 3d 59, 74-75 (2d Cir. 2011).............................................................................24

*U.S. v. Eisenberg,*
596 F. 2d 522, 528 (2d Cir. 1979)..............................................................................21

*U.S. v. Finkelstein,*
229 F. 3d 90, 97 (2d Cir. 2000)..................................................................21

*U.S. v. Int'l Longshoreman's Assn.,*
518 F. Supp. 2d 422, 462 (E.D.N.Y. 2007)..................................................6

*U.S. v. Private Sanitation Ass'n of Nassau/Suffolk,*
793 F. Supp. 1114, 1154 (E.D.N.Y. 1992)...................................................8

*U.S. v. Reyes,*
302 F. 3d 48, 54 (2d Cir. 2002)..................................................................11

*U.S. v. Shelton,*
2006 WL 3406840, *1 (2d Cir. 2006)........................................................11

*United States v. Turkette,*
452 U.S. 576, 583 (1981)............................................................................18

## INTRODUCTION AND PRELIMINARY STATEMENT

Plaintiffs respectfully request this court to deny Defendants[1] Motion to Dismiss (Motion) Plaintiffs' Amended Complaint (AC).  Contrary to Chase's allegation that "at a minimum Page 1 of 33he bank must have actual knowledge of fraud, Mot., p. 1, the RICO counts and other claims alleging fraud only require the AC plausibly allege facts that constitute "strong circumstantial evidence of conscious misbehavior or recklessness."  Moreover, the other assertions of Chase, such as, for example, asserting that the claims are time-barred (Mot. p. 12-14) and that RICO claims are not adequately pleaded (Mot., p. 19-24) are without merit.

This is not a case, as characterized by Chase (Mot., p. 1), of a bank merely failing to discover and put an end to a massive fraud scheme.  Rather, this is a case in which a senior Chase Vice-President illegally opened Forex trading accounts in 2003 for Columbian nationals who, in violation of federal law, sponsored non-existent legal entities and recently created entities (herein described as the FIT entities) which were not even cleared or registered to trade futures.  These accounts were open even without the provision of any social security numbers or employer identification numbers.  See infra.  As early as 2005, Chase was alerted to an investigation into the activities of the non-registered status of FIT entities by the Commodities Futures Trading Commission (CFTC), which included the serving of a subpoena on Chase regarding the FIT entities.  Despite Chase's affirmative representation to the government to investigate the FIT entities, the FIT entities continued to operate illegally.[2]  By 2009, with

---

[1] The Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank are collectively referred herein as "Chase" or "JP Morgan."
[2]  The representation is based on documents recently received by Plaintiffs from the CFTC.

complaints rising and the inability to meet redemption requests, the scheme failed and the Plaintiffs, and hundreds of other innocent investors, were wiped out. Chase remained knowingly complicit during this entire four year period, while, as described in the AC, reaping large fees for establishing the bank accounts and fees for effecting hundreds of wire transfers to off-shore banks.

As argued below, the Plaintiffs' claims against Chase are plausibly alleged under existing Second Circuit law.

## STATEMENT OF FACTS

The AC alleges that two Columbian nationals, Jairo Enrique Sanchez (Sanchez) and Dilia Margarita Baez (Baez), created a series of entities known collectively herein as the FIT Entities who were to invest investor monies in the Forex market, but instead misappropriated $150 million of investor monies by the transfer of monies to off-shore shell companies that were under the control and direction of Baez, Sanchez and their conspirators in Colombia. AC, para. 1; AC, para. 10-11; AC para. 57 (transfer to a shell company in Colombia). This was a classic *Ponzi* scheme as Baez and Sanchez used customer money to pay existing customers as they requested redemptions and for their own use. AC, para. 1. By 2009, the Plaintiffs lost their entire investment held by Chase totaling over $3.135 million.

This scheme could not have worked without, at a minimum, an indifferent, or in this case, a complicit bank, to serve as the custodian of the monies. Yolanda Santiago-Hasbun, a Vice-President at Chase in New York, opened on May 13, 2003, an "Escrow and Client Funds Management Account" (Master 66 account) on behalf of FIT International Group Corp. (FIT Corp.), which had just one day before incorporated not in New York but in the State of Florida.

AC, para. 38; *See* Bellon Decl., Exh. 1, Business Signature card.   Moreover, this Escrow Account was opened without any social security number or any employer identification number, nor any TIN, and was never disclosed to investors.   Bellon Decl., Exh. 1; Pl. Decl.   Santiago-Hasbun then opened another account with Chase under another entity, which was incorporated in New York known as FIT International Team Inc.   AC, para. 2; 37.   Records available at that time clearly showed neither of these two FIT entities, FIT Corp., or the FIT International Team Inc., (AC, para. 33) were ever cleared or registered as a Registered Futures Commodities Merchant ("RFCM") with the National Futures Association ("NFA").   This was in clear violation of the Commodities Exchange Act, section 6b, as specifically described in the AC, para. 2.

Baez and Sanchez, through the FIT Entities, cultivated a strong business relationship with Chase as a private small business client with the aid of its executive, Yolanda Santiago-Hasbun. AC, para. 5.   Pursuant to the "Escrow and Client Funds Management Account" agreements Plaintiffs monies were to be held sub-accounts, which would segregate their funds from those in the Master Account, and as well as from other sub-accounts held by the FIT Entities at Chase. AC, para. 7; *See* Bellon Decl. Exh. 2 (Client Account Application listing Sub-Account Account 292-610352-6-67; signed by Yolanda Santiago-Hasbun as "Representative").   Chase permitted all funds from putative investors to be commingled into the Master Accounts first, which allowed Baez and Sanchez, through the FIT Entities to withdraw and/or transfer funds without any limitations. AC, para. 44.

Despite the appearance that monies were being invested in the Client sub-accounts (Bellon Decl., Exh. 3, segregated sub-accounts for the three Plaintiffs which were disclosed by Chase to investors, but were in reality not funded), questions arose as to the non-registered status of the two FIT entities as early as 2005. In that year, the CFTC's Division of Enforcement

launched an investigation into the activities of Baez and Sanchez, including the serving of subpoenas on Chase officials (AC, para. 82).  This investigation was stymied by the lack of cooperation of Baez and Sanchez. See AC, para. 101, based on documents received in the limited discovery Chase's interactions with the CFTC after receipt of the subpoena indicated that Chase knew that Baez and Sanchez were refusing to answer questions.  Meanwhile, Baez and Sanchez continued to make fraudulent representations to the Plaintiffs and others. AC, para. 43(A –(G). Chase continued to collect fees and profits from the FIT entities' accounts for another <u>four</u> years acting with conscious disregard of its anti-money laundering responsibilities imposed by the Patriot Act. AC, para. 12-15; 41(3).   In addition to adding legitimacy to the transactions, Chase received large fees for executing wire transfers of monies to and from Plaintiffs' accounts to Panama and the Cayman Islands.  AC, para. 43.

None of the monies entrusted to Chase and managed by the FIT entities, were used to buy, sell or invest in the Forex market (AC, para. 10; 19).  By 2009, the scheme collapsed under its own weight, as there were increased withdrawals and large redemption requests.  AC, para. 39.  This led to the closing of the Chase accounts as of May 29, 2009.  AC, para. 39.

In March 2010, a class action suit against the Sanchez, Baez, and the FIT entities (but not Chase) was filed in the Southern District of New York.  Mot, p. 13, ftn. 7.  This action was closed for failure to prosecute in 2011.  None of the Plaintiffs were named representatives in this suit nor did they ever receive notice of this lawsuit or is there evidence of its publication. Another class action suit was filed in 2012, which the Plaintiffs have opted-out of. As further discussed in Section I.D., Plaintiffs represent that after years of due diligence they could not discover Chase's complicity in the fraud until year 2012. (Pl. Exh. 1).  This action was first brought on July 16, 2014.

**ARGUMENT**

The court will find a pleading sufficient where it alleges sufficient facts, which, if true, would provide adequate grounds for the plaintiff's entitlement to relief. *Bell Atlantic Corp. v. Twombly***,** 550 U.S. 544 (2007). The Supreme Court, expanding on *Twombly***,** held in *Ashcroft v. Iqbal***,** 556 U.S. 662, 678 (2009) "[T]he pleading standard [under Fed. R. Civ. P.] 8 does not require detailed factual allegations, but it demands more than unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of further factual enhancement."

Where a complaint contains sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face," the complaint will survive a motion to dismiss. *Id.* (citing *Twombly,* 550 U.S. at 570). For a claim to have facial plausibility, the plaintiff must plead facts that allow the court to reasonably infer that the defendant is liable for that which is alleged. *Id.* (citing *Twombly,* 550 U.S. at 556).

In alleging fraud, a party must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. section 9(b). But, malice, intent, knowledge and other conditions of a person's mind may be alleged generally. Id. The Second Circuit has held that in interpreting Rule 9(b)'s knowledge relaxation requirement, plaintiffs must still allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) *citing* case. "The requisite 'strong inference' of fraud for purposes of Rule 9(b) may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, <u>or</u> (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id*. at 291, citing case.

I.  Defendant Chase Inaccurately Alleges that Actual Knowledge Must be Pleaded for <u>the</u> <u>Offenses Listed in Counts 1, 2, 3, 4, 5, 7, 8, 9, 11, 14, and 17</u>

Chase alleges at Mot., II, p. 4-10, that numerous Counts should be dismissed because Plaintiffs have not adequately pleaded "actual knowledge."   This argument is misplaced.[3]

A.   <u>Scienter for RICO Counts 4 and 5 Is Adequately Pleaded</u>

First, Defendant Chase argues that the allegations in the AC do not suffice to properly plead actual knowledge, and thus the RICO Counts 4 and 5 (among others) should be dismissed.  Mot., p. 4-10.  The Defendant's arguments are misplaced because the AC adequately pleads facts, which show "strong circumstantial evidence of conscious misbehavior or recklessness," the accepted standard under Rule 9(b), which has been expressly applied in civil RICO cases. *MLSMK Investments Company v. JP Morgan Chase & Co.*, 737 F.Supp.2d 137, 142-144 (S.D.N.Y. 2010) although fraudulent intent in Rule 9(b) may be averred generally,[4]  the court stated that  "[i]n addition to alleging the particular details of a fraud, ... plaintiffs must allege facts that give rise to a strong inference of fraudulent intent which may be established either (1) by alleging facts to show that defendants had both motive and opportunity to commit fraud, <u>or</u>

---

[3]  Assuming that Defendant Chase is correct with regard to its contentions at Motion, Section I, p. 3-4, that no private action exists for Counts 1, 2, 3, and 8, the case law is clear that "factual allegations" in those Counts survive if specifically incorporated by reference into other counts. This is the case with regard to Counts 4 and 5 (RICO counts).  *See, e.g.*, RICO Count, AC para. 68, specifically incorporating by reference the wire fraud allegations from para. 46-49; and RICO Count, AC, para. 71, specifically reincorporating the money laundering allegations described in paras. 51-57.   These are "direct and explicit" re-incorporations by reference.  See, 5A Wright & Miller, *Federal Practice & Procedure: Civil 3d* § 1326, cited in *U.S. v. Int'l Longshoreman's Assn.*, 518 F. Supp.2d 422, 462 (E.D.N.Y. 2007) ("references to prior allegations must be *direct and explicit*, in order to enable the responding party to ascertain the nature and extent of the incorporation.").

[4]  See of *Center Cadillac, Inc. v. Bank of Leumi Trust Company of New York*, 808 F. Supp. 213, 229 (S.D.N.Y.1992) (finding that the plaintiffs adequately alleged mail fraud and wire fraud violations against Bank Leumi in a RICO case).

(2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.   Although the motive and opportunity prong requires the receipt of "concrete benefits," the test is framed in the disjunctive and thus only requires satisfaction of the second criterion, i.e., whether the facts constituted "strong circumstantial evidence of conscious misbehavior or recklessness."   *Lerner, supra,* 459 F.3d at 291.

Different than the facts alleged in *MLSMK*, the AC plausibly alleges facts sufficient to meet this standard.   See AC, para. 2; 20; 37, 82; 101; AC, para. 66 (describing the knowing and illegal opening of the accounts, the knowing or reckless overriding of its AML systems, and Chase's reckless, or acting with intent, to evade any investigation once notified early on of the scheme by federal authorities).   Just as these facts plausibly allege "recklessness" sufficient for *respondeat superior (see below)*, they also plausibly allege "recklessness" for purposes of finding a strong inference of fraudulent intent.   The facts alleged in *MLSMK* did not bear these badges of fraud, rather the facts alleged involved only the fact Chase had access to account records, the bank balance was fluctuating widely, and it was not plausible that Madoff could be generating substantial positive returns while the overall market was down.   *MLSMK, supra,* 737 F.Supp.2d at 144.   Here, if not for the actual complicity or "conscious misbehavior or recklessness" of a senior Chase Vice-President (and plausibly other Chase officers), the accounts for non-existent and non-registered entities could not ever been opened thereby allowing the fraudsters to perpetuate their offenses under the guise of custodial services by a major banking institution, which itself was receiving subpoenas by regulatory agencies into the non-registered status of the entities.   FAC, para. 2; 27; 82; 101.

Moreover, in *Center Cadillac, Inc.,* 808 F. Supp. at 229, (denying in part a motion to dismiss a RICO complaint), the court found sufficient inferences of fraud based upon the

<u>reckless disregard for the truth</u> when, inter alia, plaintiffs were "induced … in the first place" by Bank officers' misrepresentations, similar to the factual scenario here.  AC, para. 2 (accounts illegally opened); AC 5; 40 (regular pattern of transferring assets to foreign entities which were shell companies controlled by the defendants); 41 (conscious disregard for proper banking procedures by V-P would allow the maintaining and continuation of the fraud).   In fact, the very structure established by Chase (the Master Accounts) exhibited recklessness as Chase permitted funds to be commingled in a single account first, which permitted Baez and Sanchez to withdraw and transfer, monies at will.  AC, para. 8.

Accordingly, as distinguishable from *MSLMK* and other cases cited by Defendant Chase, the AC adequately pleads facts to plausibly show that the strong inference of fraud may be based, at a minimum, on "recklessness."

Moreover, Defendant Chase does not address *respondeat superior* in which Chase could be liable for the fraudulent acts or representations of its officer,[5] other than to argue, incorrectly, that Plaintiffs failed to plausibly allege a strong inference that Santiago-Hasbun possessed "actual knowledge."  Mot, p. 10, ftn. 6.   First, *respondeat superior* is applicable when employees act within the scope of their employment, and is also applicable in civil RICO cases provided the RICO claim is not brought against the enterprise itself.  *Moses v. Martin*, 360 F.Supp.2d 533, 549 (S.D.N.Y. 2004).   *Respondeat superior* is generally viewed favorably by

---

[5]  See *U.S. v. Private Sanitation Ass'n of Nassau/Suffolk*, 793 F. Supp. 1114, 1154 (E.D.N.Y. 1992) (RICO liability may be imposed on the corporate defendants under a theory of respondeat superior finding the "application of the doctrine[ ] of ... respondeat superior will, at least, in most instances, further the statutory goals."); *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp.2d 158, 167 (S.D.N.Y. 2003) (t)he general rule is that a bank is liable for the fraudulent acts or representations of an officer or employee acting within the course and apparent scope of his employment or authority." (quoting 9 N.Y. Jur.2d Banks and Financial Institutions § 165 (1999)).

courts. *Amendolare v. Schenkers International Forwarders, Inc.*, 747 F. Supp.162,171

(E.D.N.Y., 1990) (denying motions for summary judgment  emphasizing the importance of

*respondeat superior* because it is much more likely that similar violations will not occur in the

future when pressure is put on the organization to see to it that its agents abide by the law).

Second, contrary to Chase's argument, a "recklessly indifferent" standard is applicable in

the Second Circuit courts. See *Gruber v. Prudential–Bache Securities, Inc.,* 679 F.Supp. 165,

181 (D.Conn.1987), also requiring a finding "centrality" of the corporate entity. [6]

The AC adequately alleges facts to support the inference that Santiago-Hasbun, a senior

Chase Vice-President, either had knowledge of <u>or</u> acted "recklessly indifferent toward the

unlawful activity."  Santiago-Hasbun, while acting within the scope of her employment,

improperly and in violation of law opened various accounts for the defendants when the FIT

entities were not properly registered as RFCMs with the National Futures Association, or the

CFTC, see AC, para. 2; 20, 37, and moreover illegally opened accounts for the FIT entities at

Chase as accounts without any employer identification or social security number (see <u>Bellon</u>

<u>Decl., Exh. One),</u> and without any investigation into whether the FIT entities even existed.

Without the illegal initial opening of the accounts by Chase, the "fraud would not have been able

to flourish," much less even get off the ground. AC, para. 37; 95.   These allegations certainly

---

[6] The centrality required for "respondeat superior" may also be satisfied here as it is plausible that other "high-level employees" were "involved" in the racketeering activity as in year 2005, the CFTC's Division of Enforcement launched an investigation into the activities of Baez and Sanchez, including the serving of subpoenas on bank officials (para. 82), and Sanchez and Baez refused to answer CFTC's questions regarding their business.  Also, the *Gruber* court specified that the receipt of custodial and administrative fees may constitute a "direct or substantial benefit" from the racketeering activity.  *Gruber*, supra, 679 F. Supp.at 181 (illegal commissions received by brokerage firm considered as the substantial benefit).

support an inference of actual knowledge, or at a minimum, evidence of acting "recklessly indifferent" by Santiago-Hasbun.

    B.  Actual Knowledge for Counts 7 (Knowing Participation); 9 (Aiding and Abetting Breach of Fiduciary); 11 (Aiding and Abetting Conversion); 14 (Commercial Bad Faith); and 17 (Aiding and Abetting Fraud) Is Adequately Alleged

The Defendant inaccurately argues that Plaintiffs must have adequately plead facts which plausibly show "actual knowledge" by the Defendant with regard to these claims, *i.e.*, aiding and abetting a conversion, aiding and abetting fraud, and aiding and abetting a breach of fiduciary duty, and the other claims knowing participation; and commercial bad faith.[7]  Defendant's contentions are incorrect for two reasons.

The Defendant ignores the fact, in a case even cited by Defendant, that "conscious avoidance" or "willful blindness" is sufficient to satisfy the knowledge prong of an aiding and abetting claim.  *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp.2d 349, 368 (S.D.N.Y. 2007) (holding that there is no reason to spare a putative aider and abettor who consciously avoids confirming facts that, if known, would demonstrate the fraudulent nature of the endeavor he or she substantially furthers).  *See also Cromer Finance Ltd., v. Berger*, 2003 WL 21436164, *9 (S.D.N.Y. 2003) (finding material issue of fact to preclude summary judgment as there was no reason to believe that New York law would not accept "willful blindness" as a substitute for actual knowledge in connection with aiding and abetting claims).   In fact, since *Fraternity Fund*, many courts adjudicating whether a plaintiff has pled actual knowledge on an aiding and abetting claim have now found that "conscious avoidance" constitutes actual

---

[7] Mot., p. 4-10.

knowledge. *In re Agape Litigation*, 713 F. Supp.2d 298, 309 (E.D.N.Y. 2011), *citing* cases.[8]   As described above, the AC adequately pleads that Chase (through its senior employee Santiago-Hasbun and plausibly others) "consciously avoided" the facts which would have demonstrated the FIT fraud.   See, e.g., AC, para. 2; 20; 37; para. 81 (pleading Chase "consciously avoided" knowledge); para. 82 (service of subpoena on Chase by CFTC in 2005); para. 100 (Chase "consciously avoided" knowledge).

    c.  Substantial Assistance for  9 (Aiding and Abetting Breach of Fiduciary); 11 (Aiding and Abetting Conversion); and 17 (Aiding and Abetting Fraud)

Claims such as participation in breach of fiduciary duty, aiding and abetting fraud and commercial bad faith are subject to the requirements of Rule 9(b). *Dubai Islamic Bank, supra*, 256 F. Supp.2d at 167, *citing* cases.   The *Dubai* court stated that although each of these claims differ slightly, proof of "substantial assistance" will satisfy each of the participation requirements.  *Id*.

"Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur. However, the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Lerner, supra*, 459 F.3d at 295.  Importantly,

---

[8]  *"*Conscious avoidance" is defined as evidence that the defendant ... was aware of a high probability of the disputed fact and ... deliberately avoided confirming that fact. . .."   *U.S. v. Shelton*, 2006 WL 3406840, * 1 (2d Cir. 2006).  *See U.S. v. Reyes*, 302 F.3d 48, 54 (2d Cir. 2002) for a detailed discussion of the doctrine of "conscious avoidance," also known as deliberate ignorance or "willful blindness," in which the court stated the doctrine has found fertile ground in this country where it has taken root.   The court cited to cases, which stated "it is a practical necessity given the ease with which a defendant could otherwise escape justice by deliberately refusing to confirm the existence of one or more facts that he believes to be true." *Id*., citing case.

banks "have a <u>duty</u> to safeguard trust funds deposited with them when confronted with clear evidence indicating that those funds are being mishandled.  Neither a large bank nor a small bank may urge that it is ignorant of facts clearly disclosed in the transactions of its customers with the bank ... nor may a bank close its eyes to the clear implications of such facts." *Lerner*, 459 F.3d at 295, *citing* cases.   The court in *Lerner* <u>held</u> that when a bank had actual knowledge that accounts were intended to be trust accounts for client funds it had a duty to make reasonable inquiries and safeguard attorney trust funds from the attorney's misappropriation. *Id*.

The facts alleged in the AC are distinguishable from those facts in cases cited by Defendant (Mot. 17), which involved only isolated transfers of money, and, unlike here, presented only conclusory evidence of any bank knowledge.  *Cf., MLSMK Inv. Co. v. JP Morgan Chase and Co.*, 431 Fed. Appx. 17, *3 (2d Cir. 2011); *2006 Frank Calandra Jr. Irrevocable Trust v. Signature Bank Corp.*, 503 Fed Appx. 51 *3 (2d Cir. 2012).

In fact, banks have been found liable for providing "substantial assistance" in aiding and abetting claims on facts similar to those alleged in the AC.  See *See OSRecovery, Inc. v. One Groupe Intern. Inc.*, 354 F. Supp.2d 357, 376 (S.D.N.Y. 2005) (denying defendant's motion to dismiss aiding and abetting common law fraud finding substantial assistance when the bank in effect assisted the fraud by providing a tiered account system which allowed the Defendants to have unauthorized control of Plaintiffs' money which, in turn, allowed Defendants to filter the funds fraudulently obtained from Plaintiffs out of the accounts).    This is similar to facts alleged in the AC, which describes that the very structure established by Chase (the Master Accounts) permitted incoming funds to be commingled in a single account first before being supposedly put in segregated accounts (which they weren't) which permitted Baez and Sanchez to withdraw and transfer incoming monies at will.  AC, para. 8.

Thus, contrary to Defendant's assertions at Mot., p. 11, Plaintiffs are not claiming to having met the "substantial assistance" requirement merely by alleging facts, which show the Chase merely provided ordinary banking services and then failed to prevent the fraud.   The AC plausibly alleges that unlike the cases cited by Chase, Chase had a *duty* to safeguard funds after being confronted of evidence the funds were being mishandled, but did not take any steps to prevent the misappropriation.  AC, e.g.,  para. 81-82; 98; 100; 101.   This duty arguably existed under the Escrow and Client Funds Management Account. Exh. 2, signed by Baez as Master Account holder, and Santiago-Hasbun as Chase Representative establishing sub-account number 67 for one of the Plaintiffs.  See *Lerner, supra*, 459 F.3d at 289, finding that for purposes of a negligence claim, regardless of how the accounts were titled, the banks had actual knowledge that the accounts were intended to be trust accounts for client funds, and the Court assumed for purposes of the Rule 12(b)(6) motion that this allegation to be true.  See *Black's Law Dictionary*, 2nd Ed., definition of "Escrow account" - "In Banking, this is a special account for holding specific monies for disbursement under specific conditions.  In this case, the bank disburses monies to pay whatever obligation the account holder assigned."

The duty also sprung after Chase's receipt of a government subpoena in 2005. Chase had knowledge that Baez and Sanchez were not cooperating in that investigation (AC, para. 101), and Chase's affirmatively represented that it would conduct an investigation into the FIT entities, but apparently took no action. See ftn. 2, supra.[9]

---

[9] See *Lehman Brothers Commercial Corporation v. Minmetals International Non-Ferrous Metals Trading Company*, 179 F.Supp.2d 118, 152-153 (S.D.N.Y. 2000) (denying a summary judgment motion by the bank in a breach of fiduciary duty claim finding that Lehman could have found to have "*substantially assisted*" an agent's breach when it failed to investigate the agent's suspicious actions).

Accordingly, because this duty arguably existed, which is a question of law for the court, the AC plausibly alleges facts to support allegations that Chase provided "substantial assistance" in this matter even it only took inaction with regard to the massive fraud.  Moreover, given the above, a fiduciary duty existed for purposes of Counts 12, 13, and 15.[10]

II.     Statute of Limitations- Counts 4 and 5 (RICO and RICO Conspiracy);  Counts 10 and 11 (Aiding and Abetting Conversion and Conversion) Are Not Time-Barred

A.  RICO Claims Are Not Time-Barred

Defendant Chase flatly argues that Plaintiffs knew or should have reasonably known of the alleged fraud no later than May 29, 2009, the date the Chase accounts were closed.  Mot., p. 13.  Defendant Chase ignores both the facts and the law regarding "inquiry notice."

First, although the Supreme Court in *Rotella v. Wood*, 528 U.S. 549, 553; 556 (2000) rejected the pattern discovery rule, instead applying an injury discovery accrual rule starting the clock when a plaintiff knew or should have known of his injury, the Court was clear in stating the four year statute of limitations period accrues when the plaintiff knows "that he has been hurt and who has inflicted the injury." (emphasis added).  *See also Bankers Trust Co. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988), a plaintiff's action accrues against a *defendant* for a specific injury on the date that plaintiff discovers or should have discovered that injury.

Moreover, the Second Circuit has recently focused on when a plaintiff should have more than a "general awareness" of the defendant's actions, not merely having discovered an injury. In *Cohen v. S.A.C. Trading Corp.*,  711 F.3d 353, 361-362 (2d Cir. 2013) the court vacated a lower court's decision dismissing the complaint finding that the plaintiff's "general awareness"

---

[10]  Chase asserts incorrectly that there is no fiduciary duty because, *inter alia*, the Plaintiffs "offer the implausible allegation that an escrow agreement existed."  Mot. p. 15.  This statement is completely belied by Chase's own records and statements.  Bellon, Exh. 2.

of the defendant's concealment of income did not put her on inquiry notice of the fraud alleged. The *Cohen* court stated that the duty to inquire is triggered by information that "relates directly to the misrepresentations and omissions the Plaintiffs later allege in their action against the defendants," *citing* case.  The *Cohen* court stated that "if some inquiry is made, the court will impute knowledge of what a plaintiff in the exercise of reasonable diligence should have discovered concerning the *fraud*, and in such cases the limitations period begins to run from the date such inquiry should have revealed the *fraud*."  *Id*. at 362 (emphasis added).

Assuming the Plaintiffs should have begun "some" inquiry as to whether there was fraud at the time of closing of the accounts, which the Plaintiffs did, the exercise of "reasonable diligence" by the Plaintiffs would not have uncovered the circumstances of the fraud, much less "who" inflicted the injury until years later.  From the time of the very closing of the accounts, the Plaintiffs were seeking documents but Baez, Sanchez, and the FIT entities were non-responsive to record requests, and Chase not only refused to provide statements/records of the Master Accounts to Plaintiffs, but even denied any direct relationship between the Plaintiffs and Chase.  Dkt. 22, p. 1 (December 2, 2014 letter).

As a result, the Plaintiffs could not upon reasonable diligence have found knowledge of the fraud, much less Chase's participation in the fraud until September 12, 2012 when, after years of inquiry and efforts to obtain relevant documents, Plaintiffs finally received files from the Columbian prosecutor, which included the Chase bank statements from 2005-2009, including the Business Card, Escrow Account applications, and how monies were disbursed from the Master Accounts.  Pl. Decl., Exh. 1;  Bellon Decl., Exh. 1; 2; 3.  Certainly, Plaintiffs exercised reasonable diligence in pursuing the discovery of the fraud, and as such, the limitations period only began to run in year 2012.  See *Cohen,* 711 F.3d at 362.

Second, equitable considerations must be considered.  As stated by the Supreme Court in *Rotella, supra*, 528 U.S. at  560-561, "[i]n rejecting pattern discovery as a basic rule, we do not unsettle the understanding that federal statutes of limitations are generally subject to equitable principles of tolling, . . .and where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty," *citing* to *Klehr v. A.O. Smith Corporation*, 521 U.S.179, 194-95 (1997)  (holding that when a plaintiff does not, in fact, know of a *defendant's unlawful activity*, and when the defendant takes "affirmative steps" to conceal that unlawful activity, those circumstances are sufficient to toll the limitations period (or to "estop" the defendant from asserting a limitations defense) if the plaintiff exercises due diligence in respect of its RICO claim).

These equitable considerations certainly apply here.  From the time Plaintiffs learned of the closing of the accounts, Plaintiffs unsuccessfully sought for years to receive documents from the CFTC, Chase, and the FIT entities, which would have revealed the fraud.  Plaintiffs did not finally receive notice of the fraud, much less Chase's complicity in the fraud, until September 2012, when it received the documents from Columbia.

Therefore, either under inquiry notice analysis, or under equitable principles of tolling (due to the non-disclosure and plausible concealment by Chase of its Master Account records), the SOL did not begin to run until year 2012.   Accordingly, the filing of the first Complaint in July 2014 naming Chase as a defendant, and filing of the AC naming Chase as a RICO defendant in February 2015, was well within the four-year statute of limitations.

Defendant Chase's alternate argument that at the very latest, the Plaintiffs were put on notice by the alleged injury on March 10, 2010, when the class action suit was filed (and later dismissed for failure to prosecute) is without merit.  As mentioned above, the Plaintiffs had no

knowledge of this lawsuit as they were not the named class members of that suit, and Chase was not a defendant in that suit.  Moreover, Defendant Chase has not provided any information to indicate that sufficient notice of this lawsuit was given in Columbia, where almost all of the investors resided or were nationals.

B.      Conversion/Gross Negligence Claims Are Not Time-Barred

Regarding Counts 10; 11; and 15 (see Mot., p. 14, B.), Defendant categorically states that because there is a three-year statute of limitations, those claims are time-barred.   This statement is incorrect given that the doctrine of equitable tolling may be invoked to defeat a statute of limitations defense.  *Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir.2007) (noting that New York law authorizes the use of the equitable estoppel doctrine to toll a statute of limitations " 'when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action' "*Annunziatta v. Orkin Exterminating Co*., 122 F.App'x 524, 526 (2d Cir. 2004) (finding no abuse of discretion in the district court's decision not to toll the statute of limitations for equitable reasons).   As described above, the Plaintiffs exercised due diligence to determine the potential liability of Chase, but was not able to determine Chase's role until the receipt of documents from the Columbian government in 2012.  Therefore, the filing of the conversion and gross negligence claims are well within the three-year statute of limitations.

III.    The RICO Claims Are Adequately Pleaded

Defendant Chase alleges that the Plaintiffs have not adequately pleaded RICO claims (Counts 4 and 5).   This argument is without merit.

A.  Existence of RICO Enterprise Is Adequately Alleged

Defendant Chase first asserts that the Plaintiffs have not pleaded facts which suggest the association in fact enterprise was "separate and apart" from the alleged racketeering activity.

Mot., p. 20.   In Boyle *v. United States*, 556 U.S. 938, 946-948 (2009), the Court resolved a split in the circuits and ruled that an enterprise need not have an "ascertainable structure," nor need have a hierarchical structure, a chain of command, or other business-like attributes.   Instead, the RICO association-in-fact enterprise, in determining whether the enterprise was a separate element must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.   Id., at 947, *citing to United States v. Turkette*, 452 U.S. 576, 583 (1981), an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct."

Courts in the Second Circuit have found that the pleading of the enterprise element in RICO is liberally construed.   See *Breslin Realty Development Corp. v. Schackner*, 397 F. Supp.2d 390, 403 (E.D.N.Y. 2005) (finding the enterprise element adequately alleged as a plaintiff need comply only with the notice pleading set forth in Rule 8 of the Federal Rules of Civil Procedure to allege enterprise).   *See also In re Sumitomo Copper*, 995 F. Supp. 451, 454 (S.D.N.Y. 1998).

Contrary to Defendant Chase's allegations, the AC sets forth many facts to support a finding that the components functioned as a continuing unit and was thus distinct from the racketeering activity.   See AC, paragraphs 2; 20; 21, describing how Santiago-Hasbun illegally opened the accounts; the paragraphs describing how Chase received a federal government subpoena but refused to conduct any due diligence over money flows in the Master Account (para.8; 82); how the massive fraud was allowed to "flourish" because of the involvement of Santiago-Hasbun.   In fact, the showing that the FIT entities, their principals, and Chase functioned together is explicitly described in Count Four, para. 66 (describing the knowing and

illegal opening of the accounts, the knowing or reckless overriding of its AML systems, and Chase's reckless, or acting with intent, to evade any investigation once notified early on in the scheme by federal authorities).

B.   Common Purpose Was Adequately Alleged

Chase also alleges the enterprise lacked a plausible common purpose because there are no facts plausibly explaining "why" Chase assisted in the fraud (Mot. p. 21).   Chase misses the mark.   Unlike the case cited by Defendant, *i.e.*, *D. Penguin Bros.* v. City National Bank, 587 Fed. Appx. 663, 668 (2d Cir. 2014) (considering the liability of a bank in which the only relevant allegations were that had opened accounts for the fraudsters), this case involves accounts which were illegally opened, plausible allegations that the very structure of the Master Account system invited abuse; allegations that CNB received governmental subpoenas inquiring into the fraud, allegations that CNB's AML procedures were compromised or overridden, and allegations describing that the massive fraud existed for close to <u>seven</u> years.  See AC, supra.  Without further discovery, including the deposing of Santiago-Hasbun and other Chase senior officers, the Plaintiffs will not know exactly "why" Chase acted with complicity in this long-running massive fraud scheme, other than their obvious receipt of large amount of fees for maintaining the accounts and effecting wire transfers.   Therefore, at this stage of the proceeding, the AC adequately alleges a commonality of purpose for notice pleading requirements in the Second Circuit.

C.   Chase's Conducting of the Affairs of the Enterprise Is Adequately Alleged

Chase argues, at Mot. p. 21-22, that the ignoring or conscious overriding of the AML systems (AC, para. 66), is not sufficient to show Chase "conducted" the affairs of the enterprise. This argument ignores the abundance of allegations in the AC that Chase was complicit by

illegally opening the accounts, and then allowing, either knowingly, consciously avoiding, or recklessly, allowing the fraud to flourish.   There are various grounds to support the fact the "conduct" was adequately alleged. [11]

First, the Second Circuit takes a liberal view of the conduct requirement. See *First Capital Asset Management Inc., v. Satinwood, Inc.,* 385 F.3d 159, 178 (2d Cir. 2004) (finding one who assists in the fraud also conducts or participates in the conduct of the affairs of the enterprise).   The *Satinwood* court stated that "the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." Id, at 176, citing cases. See also *Breslin Realty Development Corp., supra,* 397 F. Supp.2d at  403 (finding that although the "conduct" language was albeit conclusory, the enterprise element is adequately alleged as a plaintiff need comply only with the notice pleading set forth in Rule 8 of the Federal Rules of Civil Procedure).

Courts in this circuit have found that the *Reves* test satisfied against banks maintaining escrow or trust accounts based on similar conduct as here. *See OSRecovery, Inc., supra,* 354 F. Supp.2d at 376 (denying a motion to dismiss RICO counts against a bank when the bank ("Lateko") took part in operating the banking aspects of the scheme, such as creating master accounts, and handling various other transactions associated with the accounts, such as preparing debit cards, suggesting an awareness of the fraudulent nature of the scheme). AC, para. 8 (Chase permitted funds to be commingled in a single account first which permitted Baez and Sanchez to withdraw and transfer monies at will).

---

[11]  In *Reves v. Ernst & Young*,  507 U.S. 170, 179 (1993), the Court interpreted the "conduct" and "participate" language in section 1962(c) as only requiring that one must have some part in directing affairs.   The court stated that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, not limited to those with a formal position in the enterprise, and encompasses a defendant who merely has *some* part in directing the enterprise's affairs.   Id.

D.  Plaintiffs Do Allege Chase Engaged in a Pattern of Racketeering

Chase's first argument that Plaintiffs "failed to plead even one predicate act" (Mot., p. 22) is incorrect because the factual allegations of the wire fraud, ITSP, and money laundering counts have been specifically incorporated by reference into the RICO allegations.   See ftn. 3; See *also DiFalco v. MSNBC Cable L.L. C.,* 622 F.3d 104, 111 (2d Cir.2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint..").

Chase's second argument that actual knowledge is required to show "knowing participation" (Mot. p. 22) is belied the acceptance by this Circuit of the doctrine of "conscious avoidance," otherwise known as "willful blindness," to find mail or wire fraud violations. *See Powers v. British Vita, P.L.C.*, 57 F.3d 176, 186 (2d Cir. 1995) (plaintiff raised an inference of intent to defraud based on facts demonstrating "conscious behavior" evincing such intent by defendant*); U.S. v. Finkelstein*, 229 F.3d 90, 97 (2d Cir. 2000) (money laundering) (court could infer that if Finkelstein did not actually know the millions of dollars he was illegally laundering were drug moneys, he knew there was a high probability of that fact and *consciously avoided* knowledge);  *U.S. v. Eisenberg*, 596 F.2d 522, 528 (2d Cir. 1979) (ITSP-finding conscious avoidance instruction warranted).   Accordingly, because the AC plausibly suggests, at a minimum, Chase's knowledge by virtue of conscious avoidance or willful blindness, the "knowing participation" requirement for the predicates is met.  See AC, supra.

Third, Chase also misstates Circuit law in stating that the Plaintiffs have not alleged the wire fraud predicates with specificity (Mot., p. 23).  The AC describes in detail the fraudulent misrepresentations made by Baez and Sanchez to the Plaintiffs (AC, para. 43(A)–(G), and also

describes the wirings made by Plaintiffs pursuant to the fraudulent misrepresentations  See AC, Exh. 1.

Lastly, the argument that Plaintiffs have not attributed an allegedly false statement directly to Chase and thus does not meet the particularity required under Rule 9(b) (Mot., p. 23) is misplaced.    The AC, para. 44, does state that Chase "falsely represented to victims that the funds from the 66 Account had already been deposited into that account and those funds could not be distributed to anyone other than to trade in the forex market."  See also, para. 75 (fraudulent misrepresentation).

Tellingly, Defendant Chase has not cited one case in support of this proposition because the law only requires the defendant's knowing participation in the scheme (which as described above can be shown by "conscious avoidance."  *See S.Q.K.F.C. Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996) (cited by Defendant), stating a civil RICO complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme.   Thus, the law is clear that there is no requirement that each culpable defendant must have made specific false statements.  *See In re Sumitomo*, supra, 995 F. Supp. at 456 (denying a motion to dismiss a civil RICO complaint alleging mail and wire fraud stating that in a complex fraudulent scheme such as this case, this court have found to relax Rule 9(b)'s heightened pleading requirements to only require the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme); *Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Investment Ltd.*, 154 F.Supp.2d 682, 692 (S.D.N.Y. 2001) (stating that Rule 9(b) only requires that a plaintiff plead the intent element of fraud in general terms).

Because Chase's "knowing participation" in the scheme to defraud has been shown by virtue of Chase's actual knowledge, or at a minimum, conscious avoidance or "conscious behavior," the wire fraud allegations have been adequately alleged.   That is all that is required, and Chase does not present one case to support its view that false statements must be specifically attributed to Chase to find it liable.   *Cf., Shetiwy v. Midland Credit Management*, 15 F. Supp.3d 437, 445 (S.D.N.Y. 2014) (cited by Defendants) (dismissing a civil RICO complaint alleging fraud when plaintiffs failed to identify a single specific mailing or phone conversation to support their claims).

> E.   RICO Conspiracy Is Adequately Alleged

Contrary to Chase's assertions, the AC does allege facts throughout which plausibly suggest that the defendants "agreed" to violate section 1962(d).  See AC, para. 72,  realleging and incorporating the preceding allegations in the AC.  As discussed above, the AC is replete with representations that Chase (through its senior employee Santiago-Hasbun and plausibly others) agreed with its conspirators (the FIT entities).   *See, e.g.*, para. 61, in which the AC alleges that Chase, acting through its employees or a minimum consciously avoiding such knowledge of fraud, along with Baez, Sanchez and the FIT entities conducted the affairs of the enterprise; AC, para. 66 (describing the knowing and illegal opening of the accounts, the knowing or reckless overriding of its AML systems, and Chase's reckless, or acting with intent, to evade any investigation once notified early on in the scheme by federal authorities). Accordingly, the requisite RICO agreement is plausibly alleged.

Moreover, the proposition that a conspiracy claim cannot stand if there is no underlying substantive violation (Mot. p. 24) is not consistent with the view of the Supreme Court, nor recent views of the Second Circuit and this court. *See Salinas v. U.S.,* 522 U.S. 52, 61-66 (1997)

(for a section 1962(d) claim it is only required is that a plaintiff alleges and proves that the defendant *agreed* to the overall goal of the conspiracy).   The Court in *Salinas* further stated  "A person ... may be liable for [RICO] conspiracy even though he was incapable of committing the substantive offense."); and a "[d]efendant need only know of, and agree to, the general criminal objective of a jointly undertaken scheme.").  *Salinas*, 522 U.S. at 63-64.  *See United States v. Applins*, 637 F.3d 59, 74-75 (2d Cir. 2011) ("[t]he Supreme Court [in *Salinas*] also rejected the proposition that a conviction for RICO conspiracy requires proof that a substantive offense was committed.");  *City of New York v. Bello*, 519 Fed. Appx. 15, 17 (2d Cir. 2014) "[t]he requirements for RICO's conspiracy charges under § 1962(d) are less demanding" than those for substantive violations";  *New York Dist. Council of Carpenters Pension Fund v. Forde*, 939 F.Supp.2d 268, 282 (S.D.N.Y. 2013) (finding that the RICO conspiracy violation was adequately alleged stating "[t]he Court of Appeals has recognized that under the law of *Salinas* other substantive elements of a RICO claim are not required to be pleaded as against defendants charged with RICO conspiracy pursuant to § 1962(d)," *citing* to *Applins*.  *See also Rehkop v. Bewick Healthcare Corp.*, 95 F.3d 285, 290 (3rd Cir. 1996) (reversing the dismissal of a section 1962(d) claim finding that if Rehkop was harmed by reason of the conspiracy, he may pursue a section 1962(d) claim even if the section 1962(c) claims have been dismissed).

    Accordingly, even if the Defendants were correct that Plaintiffs failed to state a substantive claim, *which they are not*, the AC's conspiracy claim would survive.  The AC plausibly alleges an unlawful agreement between conspirators to defraud Plaintiffs which proximately caused injury and thus this claims could be pursued (independently) even without proof of a section 1962(c) claim.  See cases, infra.

    IV.    The Fraudulent Misrepresentation Claim (Count 6) is Plausibly Alleged

Under New York law, "[t]o state a cause of action for fraud based on misrepresentations, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Lerner, supra,* 459 F.3d at 291, citing case.   Chase argues that Plaintiffs' allegations are not pled with the requisite particularity.   The two paragraphs specifically alleging the fraudulent misrepresentation are identified as AC, para. 44 and 75.   Regarding para. 44, the AC alleges that Chase falsely represented to victims that the funds from the master account could only be used to invest in Forex (para. 44), and further specificity is provided in that paragraph by Chase's provision of bank records, which falsely stated that monies were secure in the segregated escrow accounts.  This is sufficient to show that these statements and representations meet the New York law tests for fraud requirements, and meet the  "when, how, or to whom" Rule 9(b) particularity requirement.   Therefore, the AC, at this stage of the proceedings, plausibly alleges the violation.

V.      <u>Plaintiffs Have Adequately Alleged a Conversion Claim</u> (Count Ten)

Courts in the Second Circuit have set forth the requirements for a cause of action for conversion under New York law:  "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Moses v. Martin,* supra, at 541 (S.D.N.Y.2004); *In re Refco*, 759 F.Supp.2d 301, 315 (S.D.N.Y. 2010), citing cases.

Courts have stated, alternately, that "it is well settled that an action will lie for the conversion of money where there is a specific, identifiable fund, and an obligation to return or

25

otherwise treat in a particular manner the specific fund in question." *Mfrs. Hanover Trust Co. v. Chem. Bank,* 160 A.D.2d 113, 559 N.Y.S.2d 704, 712 (1st Dep't 1990); *Cumis Ins. Soc. Inc., v. Citibank, N.A.,* 921 Supp.1100, 1109-10 (S.D.N.Y. 1996). Claims sounding in conversion-including aiding and abetting-are evaluated under Rule 8, not Rule 9. *In re Refco,* 759 F.Supp.2d at 315.

Examining these two factors, courts have found that a "specific, identifiable fund" may exist even if monies are not held in a segregated account. *Kircher v. Bennett*, 648 F.Supp.2d 525, 541-542 (S.D.N.Y. 2009) (holding that the plaintiff has raised issues of fact regarding this factor that may not be resolved on a motion to dismiss); *In re Refco,* 759 F.Supp.2d at 327; *See also Cruz v. TD Bank, N.A*., 855 F.Supp.2d 157, 175 (S.D.N.Y. 2012) (conversion may lie where a specific amount of funds in a bank account is withdrawn or transferred). Thus, it is plausibly alleged that the monies held in the Master Accounts before their purported transfer to any segregated accounts, constituted an identifiable fund.

Chase argues that the AC does not plausibly allege that the requisite obligation exists, Mot., p. 25), but ignores the execution of the Escrow Accounts between Chase and FIT entities, which established the client's sub-accounts. Bellon, Decl., Exh. 2. As discussed earlier, see Section I. C, supra, this ostensibly created a fiduciary obligation between Chase and the account holders. Accordingly, the description of the execution of the escrow accounts in the AC plausibly alleged the requisite obligation to return the monies. AC, para. 7.

## CONCLUSION

For the above reasons, Chase's Motion to Dismiss should be dismissed with prejudice.

Dated:   Brooklyn, New York
        March 25th, 2015

                          Respectfully submitted,


                          <u>s/ David A. Bellon, Esq.</u>
                          David Bellon, Esq.
                          (DB 1970)
                          48 Willoughby Street
                          Brooklyn, N.Y. 11201
                          646.290.0779
                          *Attorney for Plaintiffs, DANIEL ZAMORA and*
                          *CGC, INC.*