UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL ZAMORA and CGC, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> JPMORGAN CHASE BANK, N.A., JPMORGAN CHASE BANK & CO., FIT INTERNATIONAL GROUP CORP., FOREX INTERNATIONAL TEAM INC., JAIRO ENRIQUE SANCHEZ, and DILIA MARGARITA BAEZ, <br><br> Defendants. | No. 14 Civ. 5344 (WHP) <br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF THE MOTION OF
JPMORGAN CHASE BANK, N.A. AND JPMORGAN CHASE BANK & CO.
TO DISMISS THE AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**

I. The Court Should Disregard Plaintiffs' New Allegations and Documents ........................1

II. Counts 1, 2, 3, and 8 Should Be Dismissed Because There Is No Private Right Of Action And Plaintiffs Have Abandoned The Claims..........................................................2

III. Counts 7, 8, 9, 11, 14, and 17 Should Be Dismissed Because Plaintiffs Do Not Adequately Plead That Chase Had "Actual Knowledge" Of The Alleged Fraud ...............2

IV. Counts 8, 9, 11, and 17 Should Be Dismissed Because Plaintiffs Do Not Adequately Plead That Chase "Substantially Assisted" In The Alleged Fraud...................4

V. Counts 12, 13, and 15 Should Be Dismissed Because Plaintiffs Do Not Adequately Plead The Existence Of Any Relationship Between Themselves And Chase....................................................................................................................................5

VI. Counts 4, 5, 10, 11, And 15 Should Be Dismissed Because They Are Time-Barred..........5

VII. Counts 4 and 5 Should Be Dismissed For Failure To Plead A RICO Violation ................7

VIII. Count 6 Should Be Dismissed For Failure To Plead Fraudulent Misrepresentation.........10

IX. Count 10 Should Be Dismissed For Failure To Plead Conversion....................................10

CONCLUSION................................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*,
    503 F. App'x 51 (2d Cir. 2012) ...................................................................................... 4

*Abbas v. Dixon*,
    480 F.3d 636 (2d Cir. 2007) ........................................................................................... 7

*Banco Industrial de Venezuela, C.A. v. CDW Direct, L.L.C.*,
    888 F. Supp. 2d 508 (S.D.N.Y. 2012) ............................................................................ 3

*Boyle v. United States*,
    556 U.S. 938 (2009) .................................................................................................. 7, 8

*Cohen v. S.A.C. Trading Corp.*,
    711 F.3d 353 (2d Cir. 2013) ....................................................................................... 5, 6

*D. Penguin Brothers Ltd. v. City National Bank*,
    587 F. App'x 663 (2d Cir. 2014) .................................................................................... 8

*Daly v. Castro Llanes*,
    30 F. Supp. 2d 407 (S.D.N.Y. 1998) ............................................................................ 10

*Dubai Islamic Bank v. Citibank, N.A.*,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003) ............................................................................ 8

*Fadem v. Ford Motor Co.*,
    352 F. Supp. 2d 501 (S.D.N.Y.), *aff'd*, 157 F. App'x 398 (2d Cir. 2005) ..................... 2

*First Capital Asset Management, Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004) ........................................................................................... 9

*Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC*,
    479 F. Supp. 2d 349 (S.D.N.Y. 2007) ............................................................................ 3

*In re Agape Litigation*,
    773 F. Supp. 2d 298 (E.D.N.Y. 2011) ........................................................................ 3, 4

*In re Refco Securities Litigation*,
    759 F. Supp. 2d 301 (S.D.N.Y. 2010) .......................................................................... 10

*Koch v. Christie's International PLC*,
    699 F.3d 141 (2d Cir. 2012) ........................................................................................... 6

*M'Baye v. New Jersey Sports Production, Inc.*,
   No. 06-cv-3439, 2007 WL 431881 (S.D.N.Y. Feb. 7, 2007) ................................................... 9

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
   265 F.R.D. 106 (S.D.N.Y. 2010) ............................................................................................. 2

*Martinez v. City of New York*,
   No. 11-cv-7461, 2012 WL 6062551 (S.D.N.Y. Dec. 6, 2012) ................................................ 2

*MLSMK Investment Co. v. JPMorgan Chase & Co.*,
   431 F. App'x 17 (2d Cir. 2011) ............................................................................................... 5

*New York District Council of Carpenters Pension Fund v. Forde*,
   939 F. Supp. 2d 268 (S.D.N.Y. 2013) ..................................................................................... 6

*OSRecovery, Inc. v. One Groupe International, Inc.*,
   354 F. Supp. 2d 357 (S.D.N.Y. 2005) .................................................................................. 5, 8

*Pension Committee of University of Montreal Pension Plan v. Banc of America Sec., LLC*,
   446 F. Supp. 2d 163 (S.D.N.Y. 2006) .................................................................................. 8, 9

*Qube Films Ltd. v. Padell*,
   No. 13-cv-8405, 2014 WL 3952931 (S.D.N.Y. Aug. 12, 2014) ........................................... 4, 5

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ................................................................................................................ 8

*Rotella v. Wood*,
   528 U.S. 549 (2000) ................................................................................................................ 6

*Salinas v. United States*,
   522 U.S. 52 (1997) .............................................................................................................. 9, 10

*Shetiwy v. Midland Credit Management*,
   15 F. Supp. 3d 437 (S.D.N.Y. 2014) ..................................................................................... 7, 8

*Viacom International, Inc. v. YouTube, Inc.*,
   676 F.3d 19 (2d Cir. 2012) ...................................................................................................... 2

*Walker v. Commissioner of the NYS Department of Labor & Unemployment*,
   No. 14-cv-6976, 2015 WL 128028 (E.D.N.Y. Jan. 8, 2015) ................................................... 7

**STATE CASES**

*Lawyers' Fund for Client Protection of the State of New York v. Gateway State Bank*,
   658 N.Y.S.2d 705 (App. Div. 1997) ....................................................................................... 7

*Manufacturers Hanover Trust Co. v. Chemical Bank*,
    559 N.Y.S.2d 704 (App. Div. 1990) ........................................................................... 10

*McBride v. KPMG International*,
    No. 650632/09, 2014 WL 4063044 (N.Y. Sup. Ct. Aug. 15, 2014) ......................................... 2

*Playford v. Phelps Memorial Hospital Center*,
    680 N.Y.S.2d 267 (App. Div. 1998) ............................................................................... 7

**DOCKETED CASES**

*7 W. 57th Street Realty Co., LLC v. Citigroup, Inc.*,
    No. 1:13-cv-981 (S.D.N.Y.) ........................................................................................... 6

*Bolivar v. FIT International Group Corp.*,
    No. 1:10-cv-2128 (S.D.N.Y.) ......................................................................................... 6

**STATUTES**

18 U.S.C. § 1962(d) ............................................................................................................ 9

**OTHER AUTHORITIES**

31 C.F.R. § 1020.220 .......................................................................................................... 9

New York courts have repeatedly rejected attempts to hold banks liable for fraudulent activity by account holders based on allegations that the bank "should have known" of the fraud or conclusory allegations that the bank "consciously avoided" such knowledge.  Attempting to avoid a similar outcome, Plaintiffs now feature four improper assertions:  (1) a Chase employee opened accounts "illegally," *see* Pls.' Mem. ("Opp.") 7, 8, 9, 15, 24, 29; (2) Chase had a duty to safeguard funds placed in an "escrow and client funds management account," *see id.* at 8, 9, 19, 20, 21, 32; (3) the CFTC served an unspecified subpoena on Chase in 2005, *see id.* at 7, 9, 10, 13, 15, 17, 19, 24, 25; and (4) Plaintiffs performed "years of due diligence" to understand their injury, *see id.* at 10, 21, 22, 23.  Plaintiffs offer no basis to conclude that Chase opened any account "illegally," there is no support for Plaintiffs' assertion that Chase owed them a fiduciary (or any) duty, and Plaintiffs' new assertions of a CFTC subpoena and vain efforts to understand their loss should be disregarded because they are absent from the Amended Complaint.  More importantly, even if the Court were to consider, and credit, all four assertions, with those in the complaint, Plaintiffs would *still* fail to plead facts sufficient to support the requisite showing— *i.e.*, that Chase had actual knowledge of and substantially assisted in the alleged fraud.

I.      **The Court Should Disregard Plaintiffs' New Allegations and Documents**

After Chase filed its pre-motion letter outlining grounds for dismissal of the complaint, the Court held a conference and granted Plaintiffs limited discovery and one opportunity to amend.  In amending, Plaintiffs omitted the allegations on which they now rely, including the new assertions that Chase was served some undefined CFTC subpoena in 2005; that Chase in turn represented it would "investigate the FIT entities," Opp. 7; and that Plaintiffs performed "years of due diligence," *id.* at 10.  Plaintiffs also opted not to reference or attach to the Amended Complaint any of the documents they now proffer, including a purported signature card and account application and a document purporting to represent "bank movements."  *See*

1

Decl. of D. Bellon (Mar. 25, 2015) Exs. 1-3; Decl. of D. Zamora (Mar. 25, 2015) Ex. 1.  The law is clear that "parties cannot amend their pleadings through issues raised solely in their briefs." *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y.), *aff'd*, 157 F. App'x 398 (2d Cir. 2005).  Nor can a plaintiff "shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122-23 (S.D.N.Y. 2010).  Especially here, where the Court already afforded counseled Plaintiffs an opportunity to amend in response to Chase's pre-motion letter, the Court should disregard Plaintiffs' new assertions and documents.

## II.     Counts 1, 2, 3, and 8 Should Be Dismissed Because There Is No Private Right Of Action And Plaintiffs Have Abandoned The Claims

There is no private right of action for Plaintiffs' allegations of criminal law violations.  *See* Mem. Law Supp. Mot. Dismiss ("Mem.") 3-4.  Plaintiffs have no response.  *See* Opp. 12 n.3.  The claims accordingly should be dismissed as both meritless and abandoned.  *See Martinez v. City of New York*, No. 11-cv-7461, 2012 WL 6062551, at *1 (S.D.N.Y. Dec. 6, 2012).

## III.    Counts 7, 8, 9, 11, 14, and 17 Should Be Dismissed Because Plaintiffs Do Not Adequately Plead That Chase Had "Actual Knowledge" Of The Alleged Fraud

A central failure of the Amended Complaint is that it does not adequately plead actual knowledge, as required for the aiding and abetting, commercial bad faith, and "knowing participation" claims.  *See* Mem. 4-10.  Plaintiffs respond only that "conscious avoidance" suffices.  *See* Opp. 16-17.  Some courts have accepted a "conscious avoidance" theory of aiding and abetting, *see* Mem. 7, but there is substantial and recent contrary authority, *see McBride v. KPMG Int'l*, No. 650632/09, 2014 WL 4063044, at *17 (N.Y. Sup. Ct. Aug. 15, 2014).

Even if conscious avoidance suffices, Plaintiffs' allegations do not.  Conscious avoidance is a demanding standard, "tantamount to knowledge," *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 34 (2d Cir. 2012) (internal quotation marks omitted), requiring that "it can almost be

2

said that the defendant actually knew because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge," *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007) (internal quotation marks omitted).  Plaintiffs' conclusory statements that Chase "had actual knowledge … or at a minimum consciously avoided" certain knowledge, AC at ¶ 2, or that "willful blindness is the only possible explanation," *id.* ¶ 19, fall well short, *see Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.*, 888 F. Supp. 2d 508 (S.D.N.Y. 2012).

Plaintiffs make no effort to distinguish *In re Agape Litigation*, 773 F. Supp. 2d 298 (E.D.N.Y. 2011), where "decisions not to voluntarily investigate the fraud at any other point, even when faced with 'red flags' in the account activity, [did] not constitute conscious avoidance."  *Id.* at 320; *see* Mem. 8.  As *In re Agape* explains, "conscious avoidance requires looking at whether a plaintiff has plausibly alleged that a defendant made certain decisions *specifically* to avoid attributable knowledge of the underlying fraudulent scheme."  773 F. Supp. 2d at 309.  Plaintiffs fall short of this "very high bar," *id.* at 319, offering only, *e.g.*, conclusory allegations that Chase "knew or should have known and at a minimum consciously avoided such knowledge, that since at least 2003 the transactions taking place in the 65 and 66 Accounts did not coincide with any legitimate business purpose," AC ¶ 81, or the new contention that Chase received some undefined CFTC subpoena in 2005, *see* Opp. 17.[1]  Plaintiffs do not even attempt to allege any Chase decisions that might constitute conscious avoidance, much less that Chase

---

[1]  For the first time, Plaintiffs' *brief* refers to a 2005 CFTC subpoena.  *See, e.g.*, Opp. 7, 9-10.  Contrary to Plaintiffs' assertion in the opposition, the *Amended Complaint* does not refer to any such subpoena.  Regardless, even if credited, the allegation would be immaterial.  Plaintiffs' brief does not say what was in the purported subpoena, nor does it attach it, but if the subpoena even existed, it would at best constitute a "red flag" allegation of the sort that New York courts repeatedly have found legally insufficient (*see* Mem. 6-7), and not any Chase "decision[] specifically to avoid attributable knowledge."  *In re Agape Litig.*, 773 F. Supp. 2d at 309.

3

made any decision "specifically to avoid attributable knowledge" of the alleged fraud. As in *In re Agape*, the result should be dismissal.

### IV.   Counts 8, 9, 11, and 17 Should Be Dismissed Because Plaintiffs Do Not Adequately Plead That Chase "Substantially Assisted" In The Alleged Fraud

The aiding and abetting claims also should be dismissed because Plaintiffs have not adequately pled "substantial assistance." *See* Mem. 10-13. Plaintiffs contend that Chase failed to detect and prevent the fraud, but inaction cannot constitute substantial assistance absent a duty to act, *see id.* at 12, and Plaintiffs fail adequately to plead that Chase owed them any duty, fiduciary or otherwise, *id.* at 14-18.

The "Escrow and Client Funds Management Account Client Account Application" that Plaintiffs offer (Bellon Decl. Ex. 2) is not to the contrary; nor does it answer the arguments in Chase's opening brief. On its face the document appears to be an account application completed for (or perhaps by) Defendant Baez, for a sub-account with the designation "CDS Creditos de Seguros/Luis A. Granudos"—not Plaintiffs. It is not an escrow agreement. And even if one construed it to suggest the existence of some other document constituting an escrow agreement, it certainly does not suggest that any such agreement existed between *Plaintiffs and Chase*. It does not mention *Plaintiffs*, and it does not suggest that *Chase* (as opposed to the FIT Entities) accepted Plaintiffs' "trust or confidence." *Qube Films Ltd. v. Padell*, No. 13-cv-8405, 2014 WL 3952931, at *6 (S.D.N.Y. Aug. 12, 2014); *see* Mem. 14-16. As a matter of law, even if Exhibit 2 were construed to reflect such a fiduciary relationship between *other* parties (*e.g.*, Defendant Baez and some other party), Chase had "no duty to monitor fiduciary accounts maintained at its branches in order to safeguard funds in those accounts," *2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*, 503 F. App'x 51, 54 (2d Cir. 2012) (internal quotation marks omitted), but rather was entitled to presume that "the fiduciary [would] apply the funds to their

4

proper purposes," *Qube*, 2014 WL 3952931, at *7.

Plaintiffs try to invoke a "narrow exception" to this rule, but that requires "'clear evidence' of misappropriation." *MLSMK Inv. Co. v. JPMorgan Chase & Co.*, 431 F. App'x 17, 20 (2d Cir. 2011). Plaintiffs allege no facts constituting such "clear evidence." *See* Mem. 17-18. Rather, they allege merely that the FIT Entities opened two depository accounts with two subaccounts and permitted funds transfers. *See* AC ¶ 8. Plaintiffs attempt an analogy to *OSRecovery, Inc. v. One Groupe International, Inc.*, 354 F. Supp. 2d 357 (S.D.N.Y. 2005), but the facts in that case bear no resemblance: in *OSRecovery*, the defendant was alleged to have issued thousands of anonymous debit cards linked to the fraudsters' master accounts. *See id.* at 361-62. If anything, the comparison brings into sharper focus that the unremarkable activity alleged by Plaintiffs does not and could not constitute "clear evidence" of fraud.

### V. Counts 12, 13, and 15 Should Be Dismissed Because Plaintiffs Do Not Adequately Plead The Existence Of Any Relationship Between Themselves And Chase

Plaintiffs' failure adequately to plead a duty, or any relationship between themselves and Chase, dooms the fiduciary duty, gross negligence, and unjust enrichment claims. *See* Section IV, *supra*; Mem. 14-19. The unjust enrichment claim also fails because Plaintiffs identify no specific benefit conferred on Chase, instead pointing to unspecified "fees and profits." AC ¶ 115; Mem. 19 n.8. Plaintiffs' sole response is to insist, relying on the proffered "Escrow and Client Funds Management Account Client Account Application," that "a fiduciary duty existed for purposes of Counts 12, 13, and 15." Opp. 20 & n.10. That document should be disregarded and, in any event, fails to establish that Chase owed a duty. *See* Sections I, IV, *supra*.

### VI. Counts 4, 5, 10, 11, And 15 Should Be Dismissed Because They Are Time-Barred

Plaintiffs' RICO claims are time-barred under the four-year statute of limitations, which runs from "when the plaintiff discovers or should have discovered the RICO injury." *Cohen v.*

5

*S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (internal quotation marks omitted).  Here, Plaintiffs were on *actual* notice of their injury no later than May 29, 2009, when the "JPMorgan account was reported closed," and they allegedly lost their investment.  AC ¶ 41; Opp. 8 ("By 2009, the Plaintiffs lost their entire investment held by Chase totaling over $3.135 million.").[2]  Even if the Court were to conclude that Plaintiffs were merely on *inquiry* notice as of May 29, 2009, the Amended Complaint contains no allegations showing that they were diligent in investigating, so knowledge should be imputed as of that date.  Thus the limitations period expired four years later, on May 29, 2013, and Plaintiffs' RICO claims asserted in July 2014 are untimely.[3]  *See* Mem. Op. & Order at 40, *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 1:13-cv-981 (S.D.N.Y. Mar. 31, 2015) (RICO claim time-barred based on imputed notice).

Plaintiffs' failure to plead diligence also forecloses equitable tolling, *see* Opp. 21-22, which is available only in "exceptional circumstances," *New York Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 278 (S.D.N.Y. 2013), and not at all where a plaintiff is not diligent, *see Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012).  Here, Plaintiffs cannot (and do not) point to any allegation in their complaint that supports their claim of diligence, instead asking the Court to consider new documents submitted with their brief.  *See*

---

[2] Even if Plaintiffs also needed to learn *who* caused their loss, *but see Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("discovery of the injury, not discovery of the other elements of a claim, is what starts the clock"), they were at least on inquiry notice by May 29, 2009 of any claim against Chase.  Plaintiffs allege that Defendants Baez and Sanchez told them Chase would safeguard their funds, AC ¶ 43, and that by May 29, 2009, the funds had been lost, *id.* ¶ 41.

[3] Plaintiffs surely were on inquiry notice by March 10, 2010, when a class action was filed describing the same alleged fraud at issue here, *see* Complaint, *Bolivar v. FIT Int'l Grp. Corp.*, No. 1:10-cv-2128 (S.D.N.Y. filed Mar. 10, 2010) ("Bolivar Compl."), such that the limitations period expired in March 2014, and Plaintiffs' claims asserted in July 2014 are *still* untimely.  *See Cohen*, 711 F.3d at 363 ("[O]ne who suspects a defendant of widespread fraud may be under a duty to see if others have sued the defendant and whether such suits revealed evidence of the fraud of which the plaintiff complains….").  Indeed, the 2010 Complaint cites even earlier legal proceedings, in 2009.  *See* Bolivar Compl. ¶ 61.

Opp. 21 (citing Zamora Decl. Ex. 1; Bellon Decl. Exs. 1, 2, 3).  Plaintiffs cannot amend again now to add such allegations, tolling is not warranted, and the RICO claims are time-barred.

Plaintiffs' conversion and gross negligence claims (Counts 10, 11, and 15) are also time-barred.  The claims are governed by a three-year statute of limitations that runs from the date of *injury*—not discovery.  *See Lawyers' Fund for Client Prot. of the State of N.Y. v. Gateway State Bank*, 658 N.Y.S.2d 705, 707 (App. Div. 1997); *Playford v. Phelps Mem'l Hosp. Ctr.*, 680 N.Y.S.2d 267, 267-68 (App. Div. 1998).  Nor are Plaintiffs entitled to tolling.  They allege no facts in the Amended Complaint showing that they were diligent or were prevented from suing earlier.  Rather, Plaintiffs were on notice by 2009 that funds they claim to have believed Chase would safeguard were lost.  *See* n.2, *supra*; *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007).

**VII.  Counts 4 and 5 Should Be Dismissed For Failure To Plead A RICO Violation**

Plaintiffs' RICO claims also should be dismissed for failure to state a claim, in several respects.  *First*, Plaintiffs do not adequately plead the existence of a RICO enterprise "separate and apart" from the alleged racketeering activity.  While an enterprise "need not have a hierarchical structure or a 'chain of command,'" *Boyle v. United States*, 556 U.S. 938, 948 (2009), it must have an "ascertainable structure *distinct from* the pattern of racketeering activity," *Walker v. Commissioner of the NYS Dep't of Labor & Unemployment*, No. 14-cv-6976, 2015 WL 128028, at *4 (E.D.N.Y. Jan. 8, 2015) (emphasis added).  Plaintiffs point to AC ¶ 66, *see* Opp. 24-25, but apart from the conclusory allegation that Chase "acted under the direction" of other defendants, Paragraph 66 merely recapitulates the alleged misconduct.  Plaintiffs otherwise rely upon vague and patently insufficient allegations that, *e.g.*, Chase was "at the very center" of the scheme, AC ¶ 2, "played a crucial and pivotal role," *id.* ¶ 20, and "act[ed] in concert with" other defendants, *id.* ¶ 21.  Absent are "concrete factual assertions as to the mechanics of the

7

interactions" between Chase and other defendants, *Shetiwy v. Midland Credit Mgmt.*, 15 F. Supp. 3d 437, 444 (S.D.N.Y. 2014), to support an inference of a distinct "ongoing organization, formal or informal," *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014). Plaintiffs also concede their inability to plead a common purpose, *see* Opp. 25, an indispensable element of an association-in-fact enterprise, *see Boyle*, 556 U.S. at 946.

*Second*, Plaintiffs do not adequately allege that Chase participated in the "operation or management" of a RICO enterprise. Mem. 21-22. Plaintiffs acknowledge that the test is as set forth in *Reves v. Ernst & Young*, 507 U.S. 170 (1993), *i.e.*, in order to "participate" in the affairs of a RICO enterprise, "one must have some part in directing those affairs." *Id.* at 179. As numerous courts have held, the provision of ordinary professional services (as alleged here) does not constitute such "operation and management." *See Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003) (collecting cases). *OSRecovery*, relied upon by Plaintiffs, is not to the contrary. That case did not concern the ordinary activity alleged here (opening accounts and permitting funds transfers), but a complicated scheme of "creating master accounts, issuing debit cards, providing software to support mailings to cardholders, and handling various other transactions associated with the accounts," all apparently undertaken with "awareness of the fraudulent nature of the scheme." 354 F. Supp. 2d at 376.

*Third*, Plaintiffs do not adequately plead the RICO predicates. Plaintiffs are correct that the knowledge element of the predicates can be satisfied based on conscious avoidance, Opp. 27-28, but Plaintiffs make no such showing, *see* Mem. 7-8. Concerning wire fraud, Plaintiffs claim to have raised an inference of fraudulent intent based on facts showing recklessness. Opp. 13-14. Plaintiffs' conclusory allegations (*see* AC ¶¶ 48, 51) fall far short of their Rule 9(b) obligation to allege "*facts* showing that [Chase's] conduct was highly unreasonable, representing an extreme

8

departure from the standards of ordinary care to the extent that the danger was either known to [Chase] or so obvious that [Chase] must have been aware of it." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 181 (S.D.N.Y. 2006) (internal quotation marks omitted). Plaintiffs have not met this standard by claiming, without explanation or citation to legal authority, that the accounts were opened "illegally" because no Social Security number was obtained.[4] The wire fraud claim also fails because Plaintiffs do not identify any false statement made to them by Chase. *See* Section VIII, *infra*; Mem. 24-25.[5]

*Fourth*, and finally, Plaintiffs fail to plead a RICO conspiracy under 18 U.S.C. § 1962(d). Although "an agreement is the most basic element of a RICO conspiracy claim, and the lack of such an allegation is enough for dismissal," *M'Baye v. New Jersey Sports Prod., Inc.*, No. 06-cv-3439, 2007 WL 431881, at *8 (S.D.N.Y. Feb. 7, 2007), Plaintiffs allege no such agreement. Also, because Plaintiffs fail to allege a substantive RICO violation, their conspiracy claim fails both for lack of standing and as "entirely dependent on" their substantive RICO claim. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 164 (2d Cir. 2004); Mem. 23-24. No different result is required by *Salinas v. United States*, 522 U.S. 52 (1997), which explains that a conspirator must "intend to further an endeavor which, if completed, would satisfy all of the

---

[4] This is so particularly where the very document relied upon by Plaintiffs indicates that such information was pending issuance of a taxpayer identification number to the client, in accordance with federal regulations. *See* Bellon Decl. Ex. 1 (Signature Card with notation "SS/TIN# 00-0000000 W9 – Bus Awaiting EIN/TIN"); 31 C.F.R. § 1020.220 ("Instead of obtaining a taxpayer identification number from a customer prior to opening the account, the [Customer Information Program] may include procedures for opening an account for a customer that has applied for, but has not received, a taxpayer identification number.").

[5] Plaintiffs also suggest that the Amended Complaint raises an inference of fraudulent intent with allegations of conscious *misbehavior*. *See* Opp. 1, 11, 13, 29. Although conscious misbehavior may indeed support such an inference, *see Pension Comm. of Univ. of Montreal Pension Plan*, 446 F. Supp. 2d at 181, the concept is absent from the Amended Complaint. And Plaintiffs' arguments relating to *respondeat superior*, *see* Opp. 14-15, would be relevant only if they had pled facts sufficient to establish that any individual Chase employee acted recklessly or engaged in misconduct, which they have not.

elements of a substantive criminal offense." *Id.* at 65.

## VIII. Count 6 Should Be Dismissed For Failure To Plead Fraudulent Misrepresentation

Regarding fraudulent misrepresentation, Plaintiffs rely on allegations in a single paragraph of their Amended Complaint that Chase "falsely represented to victims that the funds from the master account could only be used to invest in Forex" and provided "bank records, which falsely stated that monies were secure." Opp. 31. Plaintiffs contend they have met "the 'when, how, or to whom' Rule 9(b) particularity requirement" for a New York fraud claim. Opp. 31. Even if that were the test, Plaintiffs would fall short, not having alleged with particularity "when," "how," or "to whom" any statement was made. Plaintiffs fall even farther short of the actual Rule 9(b) requirement. *See In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 315 (S.D.N.Y. 2010) (plaintiff must identify "who, what, when, where, and how"). The claim should be dismissed.

## IX. Count 10 Should Be Dismissed For Failure To Plead Conversion

The conversion claim "rests on an allegation of fraudulent taking, and is therefore subject to the pleading requirements of Rule 9(b)." *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998). Plaintiffs have not met those requirements. Even assuming Plaintiffs have alleged the requisite "identifiable fund," they have not alleged that Chase had any obligation to "return or otherwise treat in a particular manner the specific fund in question." *Manufacturers Hanover Trust Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 712 (App. Div. 1990); *see* Mem. 25; Sections IV, V, *supra*. Thus even if the claim were timely (it is not), dismissal would be warranted.

## CONCLUSION

For the above reasons, the claims against Chase should be dismissed with prejudice.

| | |
|---|---|
| Dated: New York, New York<br>April 3, 2015 | Respectfully submitted,<br><br>/s/ Noah Levine<br><br>Noah Levine<br>Jamie S. Dycus<br>Hanna A. Baek<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007<br>Tel: (212) 230-8800<br>Fax: (212) 230-8888<br>noah.levine@wilmerhale.com<br>jamie.dycus@wilmerhale.com<br>hanna.baek@wilmerhale.com<br><br>*Attorneys for Defendants JP Morgan Chase & Co. and JP Morgan Chase Bank, N.A.* |