UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DANIEL ZAMORA, and CGC, INC.,

                                        Plaintiffs,                    **14-CV-5344 (WHP)(SN)**

                    -against-                                          <u>**REPORT AND
                                                                       RECOMMENDATION**</u>

JP MORGAN CHASE BANK, N.A., JP MORGAN
CHASE & CO., FIT INTERNATIONAL GROUP
CORP., FOREX INTERNATIONAL TEAM INC.,
JAIRO ENRIQUE SANCHEZ, and DILIA
MARGARITA BAEZ,

                                        Defendants.

-------------------------------------------------------------------X

SARAH NETBURN, United States Magistrate Judge.

To the Honorable WILLIAM H. PAULEY III, United States District Judge:

      Plaintiffs Daniel Zamora and his company, CGC, Inc., have brought these claims against

the alleged perpetrators of a Ponzi scheme that purportedly stole $35 million from more than 500

investors. The alleged perpetrators of this scheme—defendants Jairo Enrique Sanchez, Dilia

Margarita Baez along with two of their closely held corporations, FIT International Group Corp.

("FIT International") and Forex International Team Inc. ("Forex International")—failed to

appear in this action. The Clerk of the Court accordingly entered a certificate of default against

them, and Plaintiffs now move for default judgment.

      Because Plaintiffs have failed to allege any participation in the scheme by Forex

International, I recommend denying the motion for entry of default judgment against that

defendant. Plaintiffs have, however, sufficiently alleged a claim for civil RICO against the other

three defendants. Plaintiffs should, therefore, be awarded treble damages of $9,724,843.11 in addition to post-judgment interest pursuant to 28 U.S.C. § 1961.

## BACKGROUND

Plaintiff Zamora is a Colombian national, and Plaintiff CGC, Inc. is a corporation domiciled in the Republic of Panama. Am. Compl. ¶¶ 25-26 (ECF No. 25). In May 2004, Zamora met a dentist, Mauricio Vasquez, who recommended an investment company called the FIT International Group. Zamora Aff. ¶ 1 (ECF No. 103-2). According to Vasquez, FIT International Group offered foreign exchange trading services that earned an impressive return. Id.

Zamora was interested in investing with the company, so Vasquez introduced him to Defendants Baez and Sanchez, id. ¶ 3, who are also Colombian nationals, Am. Compl. ¶¶ 30-31. Zamora met with Baez and Sanchez in June 2004 at their offices in Bogota. Zamora Aff. ¶ 4; see also ECF No. 103-2 at 39 (pictures of Sanchez's and Baez's business cards from the meeting). During that meeting, Zamora signed a contract and was instructed to invest with FIT International Group by depositing funds into account number 292501956565 (the "'65 Account") at JP Morgan Chase. See Zamora Aff. ¶ 4; see also ECF No. 103-2 (email confirmation of new account opening providing these instructions). Zamora followed those instructions by depositing $45,000 into the '65 account and on June 30, 2004, he received an account statement indicating that he had already earned a 1.1% return net of the 50% commission. See Zamora Aff. ¶ 4; see also ECF No. 103-2 (monthly statement from June 2004).

Due to those purported returns, Zamora opened another account on behalf of his company CGC, which invests reinsurance premiums and commissions on behalf of reinsurers. Zamora

Aff. ¶ 5. CGC opened an account by depositing $599,000 into the same '65 Account. Id. ¶ 6.

From December 2004 to September 2008, CGC deposited a net $3,241,614.37 into the '65

Account. See ECF No. 103-3 at 4, 6 (summary of deposits and withdrawals between CGC's

accounts and '65 Account); see also ECF No. 103-3 at 7-51 (supporting documentation of

withdrawals and deposits); ECF No. 103-4 at 1-24 (same); ECF No. 103-4 at 25-31 (CPA's

affidavit affirming that her review of supporting documents identified net deposits of

$3,241,614.37). During this time, Baez personally emailed Zamora to assure him that these funds

were being held in escrow accounts. See ECF No. 103-5 at 33-37.

Plaintiffs later discovered, however, that FIT International Group was in fact a Ponzi

scheme that had defrauded more than 500 investors. See Zamora Aff. ¶¶ 8, 21-23, 29. The

scheme ultimately collapsed and became public in 2009. Id. ¶ 29. Defendants had invested only a

small portion of the $120 million that they received, and they stole approximately $35 million of

those deposits.  Id. ¶ 23. That money was siphoned off to a variety of individuals as well as shell

companies set up by Defendants. Id. ¶ 27. As described in an indictment filed by the Colombian

General Prosecutor, the funds were routed as follows:

- $1,898,200 to Bull & Bear Investment Corporation, a Panamanian corporation with a branch in Colombia;

- $2,365,000 to Jesmar Panama S.A., a Panamanian corporation with a branch in Colombia;

- $1,660,000 to Semar Internacional S.A., a Colombian corporation;

- $4,300,000 to Defendant FIT International, a Florida corporation;

- $4,235,810 to Defendant Baez;

- $592,500 to Defendant Sanchez;

3

- $1,523,153 to Mauricio Vasquez; and

- $150,000 to Defendant Baez's daughter.

<u>See</u> ECF No. 103-6 at 2-11.

Plaintiffs initiated this action in 2014, naming: (1) JP Morgan Chase Bank, N.A.; (2) JP Morgan Chase & Co.; (3) Sanchez; (4) Baez; (5) FIT International Group Corp.; and (6) Forex International Team Inc. <u>See</u> ECF No. 1. Later, Plaintiffs filed their Amended Complaint, which included 17 causes of action:

- Count One, Wire Fraud under 18 U.S.C. § 1343, against all Defendants (Am. Compl. ¶¶46-59 (ECF No. 25));

- Count Two, Interstate Transportation of Stolen Property under 18 U.S.C. § 2314, against all Defendants (Am. Compl. ¶ 50);

- Count Three, Money Laundering under 18 U.S.C. §§ 1956, 1957, against all Defendants (Am. Compl. ¶¶ 51-57);

- Count Four, RICO under 18 U.S.C. § 1962(c), against all Defendants (Am. Compl. ¶¶ 58-71);

- Count Five, RICO Conspiracy under 18 U.S.C. § 1962(d), against all Defendants, (Am. Compl. ¶¶ 72-73);

- Count Six, Fraudulent Misrepresentation, against all Defendants (Am. Compl. ¶¶ 74-76);

- Count Seven, Knowing Participation in a Breach of Trust, against all Defendants, (Am. Compl. ¶¶ 77-85);

- Count Eight, Aiding and Abetting Embezzlement, against all Defendants (Am. Compl. ¶¶ 86-96);

- Count Nine, Aiding and Abetting Breach of Fiduciary Duty, against all Defendants (Am. Compl. ¶¶ 97-102);

- Count Ten, Conversion, against all Defendants (Am. Compl. ¶¶ 103-105);

- Count Eleven, Aiding and Abetting Conversion, against the JP Morgan Defendants (Am. Compl. ¶¶ 106-112);

- Count Twelve, Unjust Enrichment, against all Defendants (Am. Compl. ¶¶ 113-119);

- Count Thirteen, Breach of Fiduciary Duty, against all Defendants (Am. Compl. ¶¶ 120-123);

- Count Fourteen, Commercial Bad Faith, against the JP Morgan Defendants (Am. Compl. ¶¶ 124-127);

- Count Fifteen, Gross Negligence, against all Defendants (Am. Compl. ¶¶ 128-131);

- Count Sixteen, Fraud, against the non-JP Morgan Defendants (Am. Compl. ¶¶ 132-134); and

- Count Seventeen, Aiding and Abetting Fraud, against the JP Morgan Defendants (Am. Compl. ¶¶ 135-140).

The JP Morgan Defendants moved to dismiss the claims against them, which the Court granted. See ECF No. 40. Sanchez, Baez, FIT International, and Forex International never entered an appearance. After the Court determined that service on those defendants was proper, Plaintiffs obtained certificates of default. See ECF Nos. 63, 67, 77, 80-81, 83, 85 99. Now, Plaintiffs have moved for entry of default judgment. See ECF Nos. 100, 102-03.

## LEGAL STANDARD

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. See Fed. R. Civ. P. 55(b)(2).

Once a defendant has defaulted, the defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). A court, however, retains the discretion to determine whether a final default judgment is appropriate. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). Thus, despite a defendant's default, the plaintiff bears the burden of demonstrating that the unchallenged allegations and all reasonable inferences drawn from the evidence provided establish the defendant's liability on each asserted cause of action. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011).

## DISCUSSION

Plaintiffs' briefing in favor of default judgment suffers from some notable flaws. Nevertheless, Plaintiffs have properly alleged a claim for civil RICO against Sanchez, Baez, and Fit International, and they have also offered proof to ascertain their damages. Thus, Plaintiffs should be granted default judgment on their civil RICO claim against certain defaulting defendants.

## I.      Claims against the JP Morgan Defendants

At the outset, Plaintiffs dedicate substantial portions of their memorandum of law arguing that the Amended Complaint sufficiently alleges a claim for civil RICO against the JP Morgan Defendants. See Pls.' Mem. at 3-13. Essentially, Plaintiffs have couched an untimely motion for reconsideration in their motion for default judgment. That implied motion is years late. It should be denied.

## II.     Tort Claims

Most of Plaintiffs' claims are styled as common law torts. See Am. Compl. ¶¶ 76-140.

Plaintiffs do not explain, however, what the elements of those claims are. See generally Pls.'

Mem. at 13-16. Plaintiffs do not even specify whether the Court should apply New York,

Florida, or Colombian law to their 11 common law claims. This makes it difficult for the Court

to determine whether Plaintiffs' allegations—taken as true due to Defendants' default—entitle

Plaintiffs to relief. The Court should, therefore, deny Plaintiffs' motion for default judgment

based on these inadequately briefed claims. Accord Wider Consol., Inc. v. Vision Prods. Co.,

No. 17-CV-3427 (RRM) (ST), 2018 WL 1320685, at *3 (E.D.N.Y. Feb. 23, 2018) ("[T]he

memorandum of law is simply too deficient; granting Plaintiff's motion would require this Court

to resolve too many legal questions for Plaintiff, and this Court declines to answer those

questions without adequate briefing."), adopted by, 2018 WL 1320664 (E.D.N.Y. Mar. 13,

2018).

## III.    Civil RICO

Plaintiffs' civil RICO claims against Sanchez, Baez, and FIT International should,

however, be granted. Plaintiffs allege that Defendants have violated, and conspired to violate,

RICO (18 U.S.C. §§ 1962(c), (d)), through predicate acts of wire fraud (18 U.S.C. § 1343),

interstate transportation of stolen property (18 U.S.C. § 2314), and money laundering (18 U.S.C.

§§ 1956, 1957). See Am. Compl. ¶¶ 46-73; see also Pls.' Mem. at 3-8.[1] To establish a RICO

---

[1] Under Section 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). Under Section 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

claim, "a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" 14 Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013) (citation omitted). For the reasons discussed below, Plaintiffs have adequately alleged these elements against the defaulting defendants, with the exception of Forex International.

**A.  RICO Violation**

To establish a RICO violation, a plaintiff "must show that a person engaged in '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Cruz, 720 F.3d at 120 (quoting DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001)). Those four elements "must be pleaded as to every . . . individual defendant." Boritzer v. Calloway, No. 10-CV-6264 (JPO), 2013 WL 311013, at *4 (S.D.N.Y. Jan. 24, 2013) (citing DeFalco, 224 F.3d at 306).

**1. Enterprise**

Plaintiffs have sufficiently alleged the elements of a RICO enterprise. They have properly alleged the existence of an association-in-fact enterprise, which is "a group of persons associated together for a common purpose of engaging in a course of conduct." Elsevier Inc. v. W.H.P.R., Inc., 692 F. Supp. 2d 297, 306 (S.D.N.Y. 2010) (citing Boyle v. United States, 556 U.S. 938, 945-47 (2009)). To plead such an enterprise, a plaintiff must plead a "'structure' exhibiting three features: a purpose, relationships among the individuals associated with the enterprise, and longevity sufficient to permit the associates to pursue the purpose of the enterprise." Id. The Amended Complaint has all three elements. It alleges that Baez and Sanchez created and managed a set of interrelated corporate entities for the purpose of executing a Ponzi scheme from

8

2003 through 2009. See Am. Compl. ¶¶ 4, 32-33, 37-38, 41, 53, 66, 68.[2] That is a structure exhibiting purpose, relationships, and longevity sufficient to plead an association-in-fact enterprise. Accord Bolivar v. Fit Int'l Grp. Corp., No. 12-CV-781 (PGG) (DF), 2017 U.S. Dist. LEXIS 39887, at *48-50 (S.D.N.Y. Mar. 16, 2017).

The allegations also sufficiently allege that Defendants are each a person distinct from the enterprise. Plaintiffs asserting a RICO claim under § 1962(c) "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001) (citations omitted). In the Amended Complaint, no one defendant comprised the entire Ponzi Scheme. FIT International was used to open bank accounts with JP Morgan for the purpose of receiving funds from customers, Am. Compl. ¶ 37, but numerous other non-defendant corporations were also a part of the enterprise, including Forex Investment Team A.G., a company incorporated in Switzerland in 2008, and Forex Investment Team S.A., a Colombian company, see Am. Compl. ¶ 36. And, according to the Amended Complaint, although Sanchez and Baez were the creators, shareholders, directors, and officers of Forex International and FIT International, the scheme also involved other non-parties, such as Jairo Sánchez and Baez's daughter, both of whom received funds from the '65 Account. See Am. Compl. ¶¶ 32-33, 51; see also ECF No. 103-6 at 2-11. These allegations are sufficient to plead persons distinct from an enterprise, even though the corporate entities were all closely held by

---

[2] The Amended Complaint alleges upon information and belief that the money was ultimately used to support terrorism within Colombia. Am. Compl. ¶¶ 39, 140.

Sanchez and Baez. See Cedric Kushner Promotions, Ltd., 533 U.S. at 163; see also Bolivar, 2017

U.S. Dist. LEXIS 39887, at *48-50.

## 2. Pattern of Predicate Acts

Plaintiffs asserting a § 1962(c) RICO claim must also allege a "pattern of racketeering

activity," which entails "at least two acts of racketeering activity" within 10 years of one another.

18 U.S.C. § 1961(5). "Racketeering activity," as defined by RICO, includes several criminal

offenses, including wire fraud (18 U.S.C. § 1343), interstate transportation of stolen property (18

U.S.C. § 2314), and money laundering (18 U.S.C. §§ 1956, 1957). Demonstrating a "pattern of

racketeering activity" requires showing that the activity is "'related'" and "'amount[s] to or

pose[s] a threat of continued criminal activity.'" Crawford v. Franklin Credit Mgmt. Corp., 758

F.3d 473, 478 (2d Cir. 2014) (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)).

Plaintiffs have alleged in the Amended Complaint that Defendants engaged in at least two

predicate acts within 10 years of one another, and that these acts constituted a pattern of

racketeering activity.

Plaintiffs adequately state claims for wire fraud under 18 U.S.C. § 1343. That statute

"prohibits the use of interstate wires in furtherance of 'any scheme or artifice to defraud, or for

obtaining money or property by means of false and fraudulent pretenses, representations, or

promises.'" A. Terzi Prods. v. Theatrical Protective Union, Local No. One, 2 F. Supp. 2d 485,

499 (S.D.N.Y. 1998) (quoting 18 U.S.C. § 1343). To state a claim for wire fraud, a plaintiff must

plead: "(1) the existence of a scheme to defraud, (2) with specific intent to defraud, and (3) the

use of interstate wires in furtherance of the scheme." Id. (citing S.Q.K.F.C., Inc. v. Bell Atlantic

Tricon Leasing Corp., 84 F.3d 629, 633 (2d. Cir. 1996)). Allegations of wire fraud, as predicate

acts for a RICO claim, must meet Rule 9(b)'s particularity standard. See Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 412 (S.D.N.Y. 2013) (citing Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184-85 (2d Cir. 2008)). In the context of "complex civil RICO actions involving multiple defendants . . . . Rule 9(b) does not require that the temporal or geographic particulars of each . . . wire transmission made in furtherance of the fraudulent scheme be stated with particularity . . . . Rule 9(b) requires only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." Sumitomo Copper Litig., 995 F. Supp. at 456 (citations omitted).

 Plaintiffs have alleged these elements with particularity. First, they have identified numerous specific statements that were so false that they can only be interpreted as acts in furtherance of an intentional scheme to defraud investors. Zamora attests that he personally met with Baez and Sanchez in June 2004 and that he was told he could invest with them by depositing funds into the '65 Account owned by FIT International. See Zamora Aff. ¶ 4; see also Am. Compl. ¶ 5. Afterwards, he allegedly received account statements showing impressive returns. Zamora Aff. ¶ 4; see, e.g., also ECF No. 103-4 at 33. Defendants further marketed the foreign exchange services of "FIT International Group" through marketing materials and the websites www.fitforex.com and www.fitcolombia.com, claiming—falsely—that the companies were registered to trade commodity futures. See Zamora Aff. ¶¶ 1-2; see also ECF No. 103-2 at 16-22. According to Plaintiffs, however, none of the information from Baez, Sanchez, the websites, or the marketing materials was true; instead, Plaintiffs allege that Defendants directed investors to deposit funds into the '65 Account owned by FIT International—which was created, owned, and operated by Sanchez and Baez—before siphoning those funds to international

holdings in Switzerland, Panama, and Colombia. See Am. Compl. ¶¶ 39-40; Zamora Aff. ¶¶ 4,

27. These allegations are sufficient to plead, with particularity, the existence of a fraudulent

scheme as well as Defendants' specific intent to defraud. See, e.g., Drenis v. Haligiannis, 452 F.

Supp. 2d 418, 429-30 (S.D.N.Y. 2006) (collecting cases holding that fraudulent intent "is

presumed to be established" in Ponzi scheme cases).

 Plaintiffs have also adequately pled the last element, the use of interstate wires in

furtherance of the scheme. They allege the dates, amounts, and recipients of dozens of wire

transfers to and from the '65 Account from 2003 to 2009. See Am. Compl. ¶¶ 51-57. Each of

those wire transfers constitutes a separate offense under the statute. See Ctr. Cadillac, Inc. v.

Bank Leumi Trust Co. of New York, 808 F. Supp. 213, 227 (S.D.N.Y. 1992), aff'd, 99 F.3d 401

(2d Cir. 1995) ("Each separate mailing can constitute an offense under the mail fraud statute,

even if there is only one scheme to defraud."). Given that FIT International is incorporated in

Florida and that Plaintiffs' funds were wired from Panama, these allegations are sufficient to

plead multiple acts of mail and wire fraud occurring over a 10-year period. See 4 K & D Corp., 2

F. Supp. 3d at 539; Sumitomo Copper Litig., 995 F. Supp. at 457.

 Having found that the Amended Complaint adequately alleges that Defendants

committed at least two acts of racketeering activity within 10 years of one another, the Court

must still determine whether the Amended Complaint alleges a "pattern of racketeering activity,"

in that the activity is "'related'" and "'amount[s] to or pose[s] a threat of continued criminal

activity.'" Crawford, 758 F.3d at 478 (quoting H.J. Inc., 492 U.S. at 239).

 Both elements—relatedness and continuity—are adequately alleged here. Racketeering

activity is "related" under RICO where the activity has "the same or similar purposes, results,

participants, victims, or methods of commission, or otherwise [is] interrelated by distinguishing characteristics and not isolated events." H.J. Inc., 492 U.S. at 240 (citation and internal quotation marks omitted). In this case, Plaintiffs have adequately alleged that the acts of wire fraud are "related," in that they served the same purpose of soliciting investor funds under the false pretense that Defendants would use those funds to trade in foreign currency and earn consistent, profitable returns on Plaintiffs' behalf. They have further adequately pleaded that the activity, as alleged, constitutes a closed-ended continuity.[3] See De Sole, 974 F. Supp. 2d at 308 (closed-ended continuity adequately alleged where predicate acts took place over at least three years).

Because the allegations of wire fraud against Defendants are sufficient, the Court need not assess whether the Amended Complaint also states proper RICO claims predicated on Plaintiffs' alternative theories of interstate transportation of stolen property (18 U.S.C. § 2314) and money laundering (18 U.S.C. §§ 1956, 1957).

### 3. Defendants' Involvement in Racketeering Conduct

Finally, a "RICO plaintiff must also allege that the defendants 'conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" De Sole v. Knoedler Gallery, LLC, 974 F. Supp. 2d 274, 301

---

[3] The "continuity" necessary to prove a pattern of racketeering activity may be either "closed-ended" or "open-ended." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). Closed-ended continuity requires a showing that the defendants committed "'a series of related predicates extending over a substantial period of time,'" id. (quoting H.J., Inc., 492 U.S. at 242), meaning no less than two years, id. (citations omitted). Open-ended continuity, however, requires a showing that "there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Id. (citing H.J., Inc., 492 U.S. at 242). The conduct alleged in the Amended Complaint could likely also constitute a claim for open-ended continuity. See Niles v. Palmer, No. 97-CV-7573 (JSM) (KNF), 1999 WL 1419042, at *9 (S.D.N.Y. Oct. 22, 1999) (open-ended continuity adequately alleged where defendants intentionally defrauded 30 investors through similar schemes involving mail and wire fraud, promoting the sham purchase of securities).

(S.D.N.Y. 2013) (quoting 18 U.S.C. § 1962(c)). With the exception of Forex International, Plaintiffs have adequately alleged that the defaulting Defendants engaged in the RICO violations.

Plaintiffs allege that Sanchez, Baez, and FIT International all played a part in the racketeering activity. Sanchez and Baez, for example, both met with Zamora and told him that the FIT Group would invest his money in foreign exchange trading. See Zamora Aff. ¶ 4; see also Am. Compl. ¶ 5. Plaintiffs also allege that FIT International owned the '65 Account that served as the primary hub for routing investors' deposits into accounts for purposes other than foreign exchange trading. Am. Compl. ¶¶ 39-40; Zamora Aff. ¶¶ 4, 27. This is sufficient to establish, in this procedural posture, that those Defendants engaged in conduct that violated RICO.

Plaintiffs do not, however, sufficiently allege that Forex International engaged in any similar conduct. Indeed, Plaintiffs do not allege that Forex International engaged in *any* conduct or played *any* role. The company is mentioned only four times in the Amended Complaint, and none of those references comes close to an allegation of racketeering. See Am. Compl. ¶¶ 1-2 (alleging Forex International's lack of registration with the NFA); id. ¶ 33 (alleging that Forex International is incorporated in New York with Baez as its sole officer and Sanchez as its sole director); id. ¶ 36 (alleging that Forex International is the only FIT Entity incorporated in New

York).[4] Zamora's Affidavit does not mention the company at all. See Zamora Aff. ¶¶ 1-40.

There is, therefore, no basis to find that Forex International committed a violation of RICO.[5]

### B. Injury and Causation

Having adequately alleged that Baez, Sanchez, and FIT International violated RICO,

Plaintiffs must also allege that the violation injured Plaintiffs. Plaintiffs have adequately done so

by offering an exhaustive list of every wire transfer from CGC into the '65 Account, along with

detailed lists of the amounts wired from that account to others for purposes other than trading on

the foreign exchange currency market. See ECF No. 103-3 at 4, 6 (summary of deposits and

withdrawals between CGC's accounts and '65 Account); see also ECF No. 103-3 at 7-51

(supporting documentation of withdrawals and deposits); ECF No. 103-4 at 1-24 (same); ECF

No. 103-4 at 25-31 (CPA's affidavit affirming that her review of supporting documents

identified net deposits of $3,241,614.37).

## IV.  Damages

If a plaintiff moving for default judgment sufficiently establishes grounds for liability, the

court must then ascertain damages with "reasonable certainty." Credit Lyonnais Sec., Inc. v.

Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). Detailed affidavits and other documentary evidence

are sufficient to prove damages in lieu of an evidentiary hearing. See Action S.A. v. Marc Rich

---

[4] The Amended Complaint alleges "Forex International Team" was the ultimate recipient of funds wired from the '65 Account, but the Amended Complaint also says that this company was "a shell company domiciled in Colombia," Am. Compl. ¶ 52, thereby suggesting that the recipient was not defendant Forex International Team, Inc., which is a New York corporation.

[5] The closest that the Amended Complaint comes to implying a role for Forex International is that it was the only FIT Entity incorporated in New York, suggesting that it was used as a prop for the claim that the FIT Group was an actual foreign exchange currency trader incorporated in New York. See Am. Compl. ¶ 36.

& Co., Inc., 951 F.2d 504, 508 (2d Cir. 2011). Although district judges are not required to hold evidentiary hearings, "the court may conduct hearings or order such references as it deems necessary and proper." Id. at 508; see also Fed. R. Civ. P. 55(b)(2)(B) ("[T]he court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: . . . determine the amount of damages.").

Here, Plaintiffs' documentary evidence is sufficient to ascertain damages with sufficient certainty without the benefit of a hearing. As discussed above, Plaintiffs have offered supporting documentation of every transfer between the '65 Account and CGC, along with a summary of those transactions and a CPA's affidavit. See ECF No. 103-4 at 25-31 (CPA's affidavit affirming that her review of supporting documents identified net deposits of $3,241,614.37).

RICO damages must be "sufficient to place the plaintiff in the same financial position he would have occupied absent the illegal conduct." Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1106 (2d Cir. 1988) (citing Illinois C.R. Co. v. Crail, 281 U.S. 57 (1930)). Treble damages under RICO are mandatory. MDO Dev. Corp. v. Kelly, 735 F. Supp. 591, 593 (S.D.N.Y. 1990). Plaintiffs have, therefore, sufficiently demonstrated $3,241,614.37 in compensatory losses, which entitles them to a total of $9,724,843.11 in treble damages.

Plaintiffs also ask for post-judgment interest and attorneys' fees. See Pls.' Mem. at 16-17. The latter request should be denied without prejudice. RICO does provide for an award of attorneys' fees. See 18 U.S.C. § 1964(c). But Plaintiffs have offered no documentation to support an award of attorneys' fees. The sole basis they offer for calculating an award of attorneys' fees is the statement in their memorandum that Plaintiffs' attorneys have "spent over 400 hours in the prosecution of this matter." Pls. Mem. at 17. That statement is woefully inadequate for an award

16

of attorneys' fees. Thus, the request should be denied without prejudice and with leave to supplement their application with adequate support.

As to the former request, Plaintiffs are "entitled to post judgment interest from" the defaulting defendants. Gov't Emples. Ins. Co. v. Alrof, Inc., No. 11-CV-4028 (SLT) (RER), 2013 WL 9600668, at *13 (E.D.N.Y. July 19, 2013), adopted by, 2013 WL 5209415 (E.D.N.Y. Sept. 13, 2013). Thus, pursuant to 28 U.S.C. § 1961, post-judgment interest should be calculated from the date of entry of judgment at a rate equal to the weekly average one-year constant maturity Treasury yield.

The Court should, therefore, deny the request for attorneys' fees without prejudice, and it should award Plaintiffs $9,724,843.11 in treble damages, along with post-judgment interest as provided for by 28 U.S.C. § 1961. Defendants Baez, Sanchez, and Fit International should be jointly and severally liable for this amount. See Gov't Emps. Ins. Co. v. IAV Med. Supply, Inc., No. 11-CV-4261 (ARR) (RER), 2013 WL 764735, at *9 (E.D.N.Y. Feb. 8, 2013) ("In a scheme where there are repeated fraudulent acts by multiple defendants . . . each defendant who participated in the fraudulent act is jointly and severally liable for the amount of damage caused."), adopted by, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013).

## CONCLUSION

I recommend: (1) denying the motion for default judgment against Defendant Forex International Team Inc.; (2) granting Plaintiffs' motion for default judgment based on violations of civil RICO against Defendants Sanchez, Baez, and FIT International Group. Corp.; (3) awarding damages of $9,724,843.11, for which Defendants Sanchez, Baez, and FIT International Group. Corp. should be held jointly and severally liable; and (4) awarding post-judgment interest

17

pursuant to 28 U.S.C. § 1961. Plaintiffs are further ORDERED to mail this report and

recommendation to Defendants at their last known addresses and to file proof of service no later

than Friday, May 17, 2019.

_____

SARAH NETBURN

United States Magistrate Judge

DATED:      May 10, 2019
            New York, New York

              *              *              *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation

to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules

of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service

is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's

objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such

objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the

chambers of the Honorable William H. Pauley III at the United States Courthouse, 500 Pearl

Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must

be addressed to Judge Pauley. The failure to file these timely objections will result in a waiver of

those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72(b); Thomas v. Arn, 474 U.S. 140 (1985).

18